**UNITED STATES of America, Appellant,**

v.

**Tina Renee DESORMEAUX, Appellee.**

No. 91–1495.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 18, 1991.
Decided Dec. 17, 1991.

Cameron Wayne Hayden, Bismarck, N.D., for appellant.

Ralph A. Vinje, Bismarck, N.D., for appellee.

Before WOLLMAN, Circuit Judge, ROSS, Senior Circuit Judge, and LOKEN, Circuit Judge.

WOLLMAN, Circuit Judge.

Tina Renee Desormeaux was convicted of assault resulting in serious bodily injury and assault with a dangerous weapon in violation of 18 U.S.C. § 1153 and 18 U.S.C. § 113(c) and (f). The government appeals from the district court's downward departure from the sentencing guidelines range. We vacate the district court's sentence and remand for resentencing.

## I.

On August 17, 1990, Desormeaux and her boyfriend, Kenny Claymore (with whom she had been living since May of that year), along with Desormeaux's three-year-old daughter, travelled from their home in Bismarck to Ft. Yates, North Dakota, where both Desormeaux's and Claymore's mothers resided. Desormeaux and Claymore planned to attend a dance in Ft. Yates on Saturday evening. The two spent the Friday night and all day Saturday, August 18, at Claymore's mother's home. Claymore left the house to go for a ride on his motorcycle late Saturday afternoon, telling Desormeaux that he would return for her at 7:30 that evening. That hour came and went without his reappearance, however, so at about 10:00 p.m. Desormeaux changed into her night clothes and put her child to bed. A half hour later, after the child had fallen asleep, Desormeaux went outside the house to smoke a cigarette. While outside, she observed Claymore and Karen Middletent drive by on the motorcycle.

Desormeaux then changed back into her street clothing and told Claymore's mother that she planned to walk to her mother's house, approximately two miles away. Before she left, Desormeaux slipped a fixed-blade hunting knife up her coat sleeve with the blade pointing toward her hand.

As Desormeaux walked toward her mother's house, she watched for Claymore and Middletent. When she saw them approaching, she flagged them down. Claymore and Desormeaux began to argue. Desormeaux then pushed Middletent, who was seated on the back of the motorcycle. Although Middletent was not immediately aware of it, Desormeaux had stabbed her in the side.

Desormeaux testified that Middletent had been "smirking" at her as if to say, "ha, ha. I got him now." She further stated that Middletent had a wine cooler in her hand, and she feared that Middletent might hit her with it. Desormeaux testified that she pushed Middletent only after Middletent stepped off the motorcycle towards Desormeaux with the bottle in her hand. Finally, Desormeaux testified that Middletent never actually raised the bottle or threatened her in any way.

Middletent, on the other hand, testified that she told Desormeaux that she and Claymore were just friends, and that Desormeaux then said, "yeah, I bet, you fuc-

kin' slut," and stabbed her in the side. Middletent also testified that she did not step off the motorcycle until after she was stabbed, and that she stepped off away from Desormeaux.

After Middletent realized that she was bleeding, she told Claymore that she needed medical attention. According to Middletent, Desormeaux then said, "take your bitch to the hospital before she dies," and "well, if you want to fuck around on me, the bitch will go down." Desormeaux denied making these statements. She testified that she had slipped the knife into her sleeve for her protection, as the walk to her mother's house would lead her past a liquor store, which was a congregating point for drunken panhandlers.

After receiving emergency treatment at the local hospital, Middletent was hospitalized in Bismarck for four days for treatment of the lacerated kidney and the resulting blood loss that she had suffered as a result of the stabbing.

A jury convicted Desormeaux of assault resulting in serious bodily injury and assault with a dangerous weapon. The sentencing guidelines range for Desormeaux's offense was thirty-seven to forty-six months. The presentence investigation report did not identify any reasons for a downward departure. Desormeaux, however, moved for a downward departure pursuant to our holding in *United States v. Big Crow*, 898 F.2d 1326 (8th Cir.1990). Over the government's objection, the district court departed downward to a sentence of twenty-four months. In support of departure, the court cited a history of abuse and the resulting emotional trauma, Desormeaux's post-arrest conduct, and the victim's wrongful conduct.

On appeal, the government argues that the district court erroneously departed downward from the sentencing guidelines range by considering improper factors in reaching its sentencing decision.

## II.

■ The district court may deviate from the guidelines range only if "the court finds ... mitigating circumstance[s] of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). To determine whether the "circumstances relied upon by the district court are sufficiently 'unusual' to warrant departure" from the sentencing guidelines, we apply the standard we adopted in *United States v. Lang*, 898 F.2d 1378, 1379 (8th Cir.1990) (quoting *United States v. Diaz–Villafane*, 874 F.2d 43, 49–50 (1st Cir.), *cert. denied*, 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989)), set out below. Our review is essentially plenary. *Id.* at 1379.

■ First, we must determine as a matter of law whether the circumstances relied upon by the district court " 'are of a kind or degree that they may appropriately be relied upon to justify departure.' " *Id.* at 1379–80 (citation omitted). Second, we determine whether these circumstances are properly supported by the record. Third, once the first two factors have been satisfied, we measure the decision to depart by a standard of reasonableness. *Id.* at 1380; *see also* 18 U.S.C. § 3742(e)(3). Finally, we note that "[t]he guidelines materials clearly indicate that departures 'were intended to be quite rare,' " *United States v. Neil*, 903 F.2d 564, 565 (8th Cir.1990) (citation omitted), and thus should be restricted to situations in which substantial atypicalities are found to exist. *Id.*

## III.

The district court must provide "the specific reason for the imposition of a sentence different from that described" in the guidelines. 18 U.S.C. § 3553(c)(2). The district court in this case provided the following explanation:

The Court will depart from the guidelines for the following reasons: a combination of circumstances, including the history of spouse abuse and diminution of feeling of self esteem and self worth, lead up to the offense conduct and further that defendant's actions since her arrest have demonstrated an ability to

185

succeed in society with the promise that society will benefit to a greater extent from an earlier release rather than a later release from incarceration, particularly with reference to the acquiring of a GED certificate during this time, despite having only a 7th grade education. And this court will make reference to Section 5K2.10 and refer to the conduct of the victim under the circumstances here where the victim's conduct should have been foreseen by her as a deliberate flaunting to the defendant of the affections, attentions and company of the male who, providentially I believe for him, managed to always be located in northwest Canada and not available for subpoena at any time during the proceedings.

■ The first reason the district court articulated for its departure was spouse abuse and the resulting low self-esteem. Under the guidelines, "emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the guidelines" range. U.S.S.G. § 5H1.3. We must therefore determine, by applying the *Lang* standard, whether the circumstances relied upon by the district court are sufficiently extraordinary that departure is proper.

Although we do not hold that spouse abuse may never constitute an unusual case that might warrant a departure, we do not believe that the circumstances in this case are sufficiently extraordinary to justify departure on that score.

Desormeaux has never been married. Approximately three years before the stabbing of Middletent, however, Desormeaux was involved in a relationship with a man who she claims physically and emotionally abused her. While we understand that such abuse may lead to diminished self-esteem, we believe that the abuse to which the district court referred is too attenuated to justify departure in this case. The abuse occurred three years before the assault. Claymore was not the abusive prior boyfriend, and certainly Middletent had no relationship to the prior abuse. The low self-esteem and diminished self-worth to

which the district court referred, " 'are [not] of a kind or degree that they may appropriately be relied upon to justify departure.' " *Lang*, 898 F.2d at 1379–80 (citation omitted); *see also United States v. Daly*, 883 F.2d 313, 319 (4th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2622, 110 L.Ed.2d 643 (1990) (criminal behavior can often be explained by past abuse and thus is not the type of consideration which warrants reductions from guidelines sentences). These emotional factors were adequately taken into account in the formulation of the guidelines and are therefore insufficient as a matter of law to justify departure. *See* 18 U.S.C. § 3553(b). *See also United States v. Garlich*, 951 F.2d 161 (8th Cir.1991). Desormeaux's mental and emotional condition may be taken into account by the district court in deciding which sentence it should impose within the guidelines range. *See Neil*, 903 F.2d at 566.

The court also cited Desormeaux's post-arrest conduct, particularly referring to the attainment of her GED degree, and her potential contribution to society as reasons for its departure from the guidelines. The government argues that these circumstances do not justify departure.

■ The sentencing guidelines provide that "[e]ducation and vocational skills are not ordinarily relevant in determining whether a sentence should be outside the guidelines" range. U.S.S.G. § 5H1.2. While Desormeaux is to be commended on her successful efforts in advancing her education, her post-arrest achievement is not sufficiently extraordinary to warrant a downward departure. This conduct is not " 'of a kind or degree that [it] may appropriately be relied upon to justify departure.' " *Lang*, 898 F.2d at 1379–80 (citation omitted). In addition, we believe that Desormeaux's potential contribution to society was "adequately taken into account in constructing the guidelines," *United States v. Williams*, 891 F.2d 962, 966 (1st Cir.1989), and thus is insufficient as a matter of law to justify departure.

■ We agree with the Fourth and Seventh Circuits that a defendant's post-of-

fense rehabilitative conduct is equivalent to acceptance of responsibility under U.S.S.G. § 3E1.1 and does not serve as a basis for departure from the guidelines. *United States v. Van Dyke*, 895 F.2d 984, 987 (4th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 112, 112 L.Ed.2d 82 (1990) (Wilkins, J.); *United States v. Bruder*, 945 F.2d 167, 173 (7th Cir.1991) (en banc).[1] *Contra United States v. Pharr*, 916 F.2d 129 (3rd Cir. 1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2274, 114 L.Ed.2d 725 (1991); *United States v. Martin*, 938 F.2d 162 (9th Cir. 1991) (post-arrest drug rehabilitation not cognizable as acceptance of responsibility under section 3E1.1). *Cf. United States v. Harrington*, 947 F.2d 956 (D.C.Cir.1991) (post-arrest drug rehabilitation may justify two-level reduction under section 3E1.1; post-arrest rehabilitation may on rare occasion warrant further reduction); *United States v. Sklar*, 920 F.2d 107 (1st Cir.1990) (post-arrest rehabilitation may on rare occasion justify downward departure beyond that provided by section 3E1.1). Desormeaux received a two-level reduction under section 3E1.1 for acceptance of responsibility when her sentence was calculated and is not entitled to a further reduction on the basis of her post-offense rehabilitative conduct. On remand, the district court may take into consideration Desormeaux's post-offense rehabilitative conduct in determining the appropriate sentence within the guidelines range. *See Neil*, 903 F.2d at 566.

■ Finally, the court referred to the victim's wrongful conduct in arriving at its decision to depart. With all due regard for the district court's opportunity to observe the demeanor of the witnesses, we cannot agree that the victim's conduct in this case justifies a downward departure.

The sentencing guidelines allow for departure "[i]f the victim's wrongful conduct contributed significantly to provoking the offense behavior." U.S.S.G. § 5K2.10. *See, e.g., United States v. Yellow Earrings*, 891 F.2d 650 (8th Cir.1989). Middle-

tent's conduct, though probably a breach of dating etiquette, was not wrongful within the meaning of this guideline. None of the factors to be considered for the extent of departure in sections 5K2.10(a)–(e) are applicable. There is no evidence that Middletent was physically menacing or that she was reputedly violent. Indeed, Desormeaux admitted that Middletent never threatened her. Finally, Middletent did not contribute to the danger presented. Therefore, as a matter of law, we hold that the victim's conduct was "'not of a kind or degree that [it] may appropriately be relied upon to justify departure.'" *Lang*, 898 F.2d at 1379–80 (citation omitted).

■ Although the district court did not specifically base its decision to depart on *United States v. Big Crow*, 898 F.2d 1326 (8th Cir.1990), Desormeaux based her request to depart on *Big Crow* and argues that it governs here. The government contends that *Big Crow* is distinguishable.

In *Big Crow*, we held that the defendant's "excellent employment history, solid community ties, and consistent efforts to lead a decent life in a difficult environment" (on an Indian reservation) were sufficiently unusual to justify a downward departure from the guidelines. *Id.* at 1332. These factors are not present in the instant case.

Big Crow had worked several years as a firefighter and forestry aide for the Bureau of Indian Affairs. His employer considered Big Crow to be such a valuable employee that he held his job open for him until his release from prison. Big Crow was able to show strong evidence of solid community ties, and had made "consistent efforts to overcome the adverse environment of the ... reservation." *Id.* In contrast, Desormeaux had been sporadically employed as a waitress. She was born in Michigan, grew up in Denver, Colorado, and had only lived on the reservation for a total of approximately sixteen months dur-

---

**1.** In reaching this holding, we have not overlooked the observation that "[a] sentencing scheme which does not touch upon, or even recognize, that one can obviously and demon-

strably reform one's actions cannot have been within the contemplation of Congress." *United States v. Floyd*, 738 F.Supp. 1256, 1259 n. 5 (D.Minn.1990) (Rosenbaum, J.).

ing two separate periods. True, her life has not been an easy one. She was reared by her mother (who had left her alcoholic husband) in a Denver neighborhood that was dangerous enough that Desormeaux's seventeen-year-old brother, an innocent bystander to a fight in a neighborhood recreation hall, died when struck by a bullet meant for one of the assailants. Whatever childhood deprivation she may have suffered, however, Desormeaux's life experiences were not so notably different from those of thousands, if not millions, of others reared in similar circumstances that it can be said that the guidelines do not adequately address her circumstances.

We are aware that we should "not lightly disturb decisions to depart," *Lang*, 898 F.2d at 1380 (citation omitted), and we should accord due deference and respect to the district court's decision. To this end, we have studied the district court's decision with care. We can appreciate the frustration the district court expressed at being cabined by the confines of the guidelines. This case may very well illustrate how the guidelines can be viewed by some as a Procrustean bed upon which those defendants whose circumstances do not neatly conform may be forced to lie. On the other hand, Desormeaux inflicted a serious bodily injury upon a legally blameless victim without any legal cause or factual justification. Whatever our view of the circumstances that gave rise to Desormeaux's assault, we must remember that "Judges are not free to reject the Guidelines out of hand, nor are they at liberty to impose personalized sentencing agendas." *United States v. Thomas*, 906 F.2d 323, 329 (7th Cir.1990) (per curiam). *Accord, Bruder*, 945 F.2d at 172.

The sentence is vacated, and the case is remanded to the district court for resentencing.