**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Jimmy M. TSOSIE, Defendant–Appellee.**

No. 93–2145.

United States Court of Appeals,
Tenth Circuit.

Jan. 14, 1994.

Don J. Svet, U.S. Atty. and Joe M. Romero, Jr., Asst. U.S. Atty., on appellant's opening brief; Larry Gomez, succeeding U.S. Atty. and Joe M. Romero, Jr., on reply brief, Albuquerque, NM, for plaintiff-appellant.

Tova Indritz, Federal Public Defender, Office of the Federal Public Defender, Albuquerque, NM, for defendant-appellee.

Before KELLY and BARRETT, Circuit Judges, and GODBOLD, Senior Circuit Judge.[1]

GODBOLD, Senior Circuit Judge:

In this case we must decide whether under U.S.S.G. § 5K2.0 and 18 U.S.C. § 3553(b) the facts present "aggravating or mitigating circumstance[s] of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described" so as to allow a downward departure in sentencing. We conclude that they do. However, the record does not permit us to review whether the district court's departure from a guideline range of 41–51 months to a four month sentence was reasonable. We must, therefore, vacate the sentence and remand for resentencing with an explanation of the degree of departure.

***Facts and Procedural History:*** On July 2, 1992 Jimmy Tsosie, defendant/appellee, returned home from work to find a note from his wife, Marjorie Fowler, stating she had gone with their children to visit her sister. The next morning Tsosie went to his sister-in-law's house in search of his wife and children. After learning they were not there, he

---

1. The Honorable John C. Godbold, Senior U.S. Circuit Judge for the Eleventh Circuit, sitting by designation.

continued to search in a nearby town. At approximately 3:30 p.m., on his way back to his home, he saw his wife's van on the highway. Tsosie tried to flag the van down, but it sped off. Tsosie then turned his truck around and set out to catch his wife's van. His wife eventually stopped her van and pulled it off on the side of the road. Tsosie stopped his truck in front of the van. He saw, sitting in the passenger side of the van, Stephen Arnold, a man Marjorie Fowler had been having an affair with for a long time. Tsosie had believed his wife was no longer seeing Arnold.

Arnold exited the van, and Arnold and Tsosie began to fight. Arnold broke away and ran approximately 600 yards along the roadside with Tsosie following him in his truck. Tsosie exited his truck, grabbed a survival type knife with a six inch blade and followed Arnold on foot as he climbed over a fence and crossed approximately 300 yards into an open field. Arnold stopped and began swinging his belt at Tsosie, striking him on the nose. Tsosie swung his knife several times at Arnold, causing a few superficial wounds, and then, when Arnold raised his leg, Tsosie struck him behind his left knee. Tsosie and Arnold continued to roll on the ground exchanging punches. Tsosie finally pushed Arnold from him and noticed Arnold was bleeding from his leg.

Tsosie drove to a nearby trading post and told the cashier to call the police and an ambulance. Upon his return to Arnold, he placed a towel inside Arnold's pants, attempting to stop the bleeding. When the ambulance arrived, 47 minutes later, Arnold was dead.

Tsosie was charged in an information with second degree murder, occurring in Indian country, in violation of 18 U.S.C. §§ 1111 and 1153. He waived indictment and pleaded guilty to an information charging him with voluntary manslaughter occurring in Indian country.

At the sentencing the district court determined, based on the presentence report, that the applicable guideline range was 41 to 51 months. The court departed downward based on a finding that, pursuant to U.S.S.G. § 5K2.0 and 18 U.S.C. § 3553(b), mitigating circumstances warranted a downward departure. The district court sentenced Tsosie to imprisonment for four months to be served in a half-way house. The government's motion to the district court to reconsider downward departure was denied.

 *Discussion:* A review of a sentencing court's departure from the guidelines involves a three step determination: (1) whether the circumstances cited by the district court justify a departure from the guidelines; (2) whether the factual findings made by the district court to justify the departure are clearly erroneous; and (3) whether the district court's degree of departure is reasonable. *See U.S. v. White,* 893 F.2d 276, 277–78 (10th Cir.1990).[2] The government does not challenge the factual findings of the district court. Hence, we consider only steps one and three.

*Circumstances Justifying Departure*

18 U.S.C. § 3553(b) provides,

[t]he court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

Further, U.S.S.G. § 5K2.0 provides,

**2.** The Supreme Court formulated a two-step analysis for reviewing a court's departure in sentencing in *Williams v. U.S.,* —— U.S. ——, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992):

First, was the sentence imposed either in violation of law or as a result of an incorrect application of the Guidelines? If so a remand is required.... If the court concludes that the departure is not the result of an error in inter-

preting the Guidelines, it should proceed to the second step: is the resulting sentence an unreasonably high or low departure from the relevant guideline range?

*Id.* —— U.S. at ——, 112 S.Ct. at 1120. In *U.S. v. Flinn,* 987 F.2d 1497 (10th Cir.1993), we held that the 10th Circuit approach established prior to *Williams* in *White* was consistent with the *Williams* framework and it was still appropriate to engage in the *White* three part analysis.

[u]nder 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." ...

The district court departed from the range of 41–51 months for an offense level 22 and a criminal history category of I, to a range of 4–10 months for a offense level of nine and a criminal history category of I because it found the existence of "aggravating or mitigating circumstance[s]." The court listed as mitigating factors:

(1) The defendant's acts in the instant case were an aberration from his usual conduct. The defendant has no prior criminal activity and has a reputation for being economically supportive of his family and has a record of long term employment with the Navajo tribe.

(2) Pursuant to § 5K2.0(a) [sic], the victim was of a greater physical strength than the defendant, thereby having an advantage over the defendant.

(3) After the altercation, the defendant attempted to provide aid and medical care to the victim.

■ The government says the district court erred in finding mitigating circumstances. Our review of whether such circumstance existed is plenary. See White, 893 F.2d at 278.

*Factor # 1*

The government contends that a defendant's economic support of his family is not relevant to the determination of a sentence. However, the first factor cited by the district court does not consist solely of Tsosie's economic support of his family. More accurately, it is that Tsosie's behavior was an aberra-

tion from his usual conduct. The totality of circumstances must be viewed to see whether the offense fits within Tsosie's normal conduct or if it is a complete shock and out of character. See U.S. v. Takai, 941 F.2d 738 (9th Cir.1991). Tsosie has had a long history of continuous employment with the Navajo Tribe. He has a reputation for being economically supportive of his family. He has not been engaged in any prior criminal activity.

■ Under Tenth Circuit case law aberrant behavior of a defendant is a proper mitigating factor to be considered in a downward departure. In U.S. v. Pena, 930 F.2d 1486 (10th Cir.1991), the defendant was convicted of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(D). The court departed downward from the applicable guideline range of 27 to 33 months to probation for a five year term. The court upheld the departure, finding it was justified for two reasons: 1) defendant's behavior was an aberration from her usual conduct which reflected long-term employment, economic support for her family, no abuse of controlled substances, and no prior involvement in the distribution of such substances; and 2) defendant was the single parent of two infants for whom she had the responsibility of financial support. The court concluded that "[t]he aberrational character of her conduct combined with her responsibility to support two infants, justified a departure."[3] Id. at 1495 (citing U.S. v. Dickey, 924 F.2d 836 (9th Cir.), cert. denied, — U.S. —, 112 S.Ct. 383, 116 L.Ed.2d 334 (1991); U.S. v. Russell, 870 F.2d 18, 20 (1st Cir.1989)). Other circuits have similarly found that aberrational behavior of a defendant warrants a downward departure from the guidelines. See, e.g., U.S. v. Takai, 941 F.2d 738, 743 (9th Cir.1991); U.S. v. Russell, 870 F.2d 18 (1st Cir.1989).

Tsosie's steady employment, economic support of his family, combined with his aberra-

---

**3.** The court so held after noting that § 5H1.6 of the guidelines says "[f]amily ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." The court said "there may be extraordinary circum- stances where family ties and responsibilities may be relevant to the sentencing decision. Here, these responsibilities, combined with the aberrational nature of [defendant's] conduct, justified the departure...." Pena, 930 F.2d at 1495.

tional conduct in that he had no prior criminal history, were properly considered by the court in departing downward.

*Factor # 2:*

 The government contends that in departing downward the district court improperly considered Arnold's strength in comparison to Tsosie's size and strength. The court said it was taking the victim's greater physical size and strength into account pursuant to 5K2.10(a).[4] The government asserts that the factors listed under 5K2.10 may only be considered where it is first established that the victim's wrongful conduct contributed significantly to provoking the offense behavior, *see U.S. v. Yellow Earrings,* 891 F.2d 650 (8th Cir.1989), and it says that Arnold's actions did not provoke the offense.

We find that Arnold's conduct contributed significantly to provoking Tsosie's offense behavior. Arnold's conduct consisted not merely of having an affair with Tsosie's wife but also of being in a vehicle with Tsosie's wife the day after she took her children away and gave a false excuse about her whereabouts. Tsosie, who believed the affair with Arnold was over, was surprised and angered. Further, in the ensuing fight, Arnold took off his belt and hit Tsosie on the nose with it and actively participated in the affray during which his leg was stabbed.

*U.S. v. Shortt,* 919 F.2d 1325 (8th Cir.1990) and *U.S. v. Desormeaux,* 952 F.2d 182 (8th Cir.1991), relied upon by the government, are distinguishable on their facts. In *Shortt* the defendant was convicted of making and possessing a pipe bomb, found in the bed of the pick-up truck of the man with whom the defendant's spouse had been having an affair. The court departed from the guideline range of one year imprisonment to a sentence of three years probation, finding that the victim had provoked the offensive behavior by having an affair with the defendant's wife. The Eighth Circuit reversed and remanded for resentencing, finding there did not exist any

wrongful conduct by the victim that provoked the offensive behavior. It said, "adultery does not justify blowing up the adulterers, or building a bomb capable of doing so." 919 F.2d at 1328. However, in *Shortt* there was no face-to-face confrontation, no false explanation, no unexpected meeting in which the defendant was struck with the realization of being deceived, and no physical fight between defendant and paramour.

In *Desormeaux,* the defendant saw her boyfriend on a motorcycle with another woman after the boyfriend told her he was going for a ride and would return later that evening to pick her up to go to a dance. The defendant got in an argument with the woman on the motorcycle and stabbed her. Defendant was convicted of assault resulting in serious bodily injury and assault with a dangerous weapon in violation of 18 U.S.C. §§ 1153, 113(c), (f). The district court departed downward from a guideline sentence range of 37 to 46 months to a sentence of 24 months, in part because it found the victim's wrongful conduct provoked the offense behavior. The court of appeals disagreed. The court said, "[the victim's] conduct, though probably a breach of dating etiquette, was not wrongful within the meaning of [U.S.S.G. § 5K2.10]." The victim's conduct in the case before us goes far beyond the victim's conduct in *Desormeaux.*

We find that there existed wrongful conduct by the victim that contributed significantly to provoking the offense behavior. The factors listed in § 5K2.10 may be considered in reducing a sentence. Thus, the district court properly considered that the victim was of a greater physical size and strength than the defendant, thereby having an advantage over the defendant.

*Factor # 3.*

 There is no contention by the government that the third factor used by the district court in departing downward—that after the altercation Tsosie attempted to pro-

---

**4.** U.S.S.G. 5K2.10 provides,

> If the victim's wrongful conduct contributed significantly to provoking the offense behavior, the court may reduce the sentence below the guideline range to reflect the nature and circumstances of the offense. In deciding the

extent of a sentence reduction, the court should consider:
> (a) the size and strength of the victim, or other relevant physical characteristics, in comparison with those of the defendant; ...

vide aid and medical care to the victim—was not an aggravating or mitigating circumstance that had not been taken into consideration by the Sentencing Commission. Rendering aid to a victim is a factor that is not considered by the guidelines. It was properly considered as a mitigating circumstance justifying a downward departure.

We conclude that a downward departure was justified based on the factors cited by the district court.

### Degree of Departure

■ The government next contends that the degree of departure, from a range of 41–51 months to a sentence of four months, was unreasonable. "To determine whether the degree of departure is reasonable, we must consider the district court's proffered justifications as well as such factors as: the seriousness of the offense, the need for just punishment, deterrence, protection of the public, correctional treatment, the sentencing pattern of the Guidelines, the policy statements contained in the Guidelines, and the need to avoid unwarranted sentencing disparities." *White*, 893 F.2d at 278 (citing 18 U.S.C. § 3742(e)(3), 18 U.S.C. § 3553(a)). "The first of these factors—the district court's proffered reasons for the degree of departure—is an absolute requirement. ... Without specific reasons for the sentence imposed, we cannot exercise our statutory mandate to review the reasonableness of a departure sentence" *U.S. v. Jackson*, 921 F.2d 985, 989–90 (10th Cir.1990). "[T]he district court's enunciation of an adequate explanation for a departure sentence is a threshold requirement, mandated by statute." *Id.* at 990.

■ The court did not give any reasons for departing from a range of 41–51 months to a four month sentence. It merely stated that it was departing from an offense level of 22 to an offense level of 9 because of the "aggravating or mitigating circumstance[s]" discussed above. Although the court set forth the factors leading to the decision to make a downward departure, it did not explain how these factors led to the decision to depart downward by 37–47 months. Absent an explanation as to why such a departure

was appropriate, it is impossible to determine whether the sentence was reasonable. *See U.S. v. Pool*, 937 F.2d 1528 (10th Cir.1991). Explanation of why a departure is made cannot fulfill the separate requirement of an explanation of the degree of departure. *See U.S. v. Kalady*, 941 F.2d 1090, 1100 (10th Cir.1991).

The reasons the court gives for its degree of departure should be "couched in terms of inadequacies in an offense level or criminal history category." *U.S. v. Roth*, 934 F.2d 248, 252 (10th Cir.1991). "Specifically, the sentencing court should draw analogies to offense characteristic levels, criminal history categories, and other principles in the guidelines to determine the appropriate degree of departure." *Id.* (citing *Jackson*, 921 F.2d at 991.)

Tsosie says the facts of this case are analogous to involuntary manslaughter, for which the guidelines specify a base offense level of 10, for criminally negligent conduct, and 14 for reckless conduct. After the reduction for acceptance of responsibility, the offense level would be 7 to 11. Therefore, he urges that the court properly departed to a level 9 in sentencing. He says that implicit in the court's departure to an offense level 9 is an analogy of the facts of the case to involuntary manslaughter. This court cannot accept Tsosie's explanation. We will not rationalize a district court's departure from the Guidelines—either the decision to depart or the degree of departure. *Jackson*, 921 F.2d at 990. "It is not our task to determine what a district court's explanation for a departure could be." *Id.* at 993. Once the court assumes the burden of the step of departure it must also bear the corresponding burden of ensuring the record contains sufficient information to determine how and why the sentencing court reached the degree of departure imposed. *U.S. v. St. Julian*, 922 F.2d 563 (10th Cir.1990) (Julian I).

■ We must now consider the Supreme Court's decision in *Williams v. U.S.*, —— U.S. ——, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992). *Williams* addressed whether a remand is necessary when the district court applies an improper ground in departing in a

sentence. The Court held that [i]f the party defending the sentence persuades the court of appeals that the district court would have imposed the same sentence absent the erroneous factor, then a remand is not required under § 3742(f)(1), and the court of appeals may affirm the sentence as long as it is also satisfied that the departure is reasonable under § 3742(f)(2).

The Tenth Circuit has held that the *Williams* analysis is to be applied in determining when a remand is necessary where the district court departs downward without articulating its reasons. *See U.S. v. St. Julian,* 966 F.2d 564, 569 (10th Cir.), *cert. denied sub nom. Sardin v. U.S.,* — U.S. —, 113 S.Ct. 348, 121 L.Ed.2d 263 (1992) (Julian II); *U.S. v. O'Dell,* 965 F.2d 937, 939 (10th Cir.1992). Under this analysis, "we should not remand if we are satisfied ... that the district court would impose the same, reasonable sentence if we required it to articulate [its reasons] with the detail specified in *Jackson* and its progeny." *O'Dell,* 965 F.2d at 939. *See also, U.S. v. Flinn,* 987 F.2d 1497, 1503 (10th Cir.1993).

As in *Flinn,* where the district court simply relied on its initial reasons for justifying the degree of departure, "we cannot follow the district court's thought process in the imposition of this sentence, and therefore we cannot determine whether such departure is reasonable, nor can we conclude with certainty that the district court would impose the same sentence [if on remand it gives an explanation for its departure.]" *Flinn,* 987 F.2d at 1503.

The sentence is VACATED and the case REMANDED for resentencing and, if there is a downward departure, a specific statement of reasons supporting the degree of departure.