F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**APR 25 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

IRVING PARKER,

       Defendant - Appellant.

No. 96-3089
(D.C. No. 95-10009-07)
(District of Kansas)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK**, **KELLY** and **LUCERO**, Circuit Judges.

Defendant Irving Parker appeals his conviction and sentence for conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. He contends that the district court erred by: (1) denying his motion for a writ of habeas corpus ad testificandum directed to his alleged co-conspirator Thelma Wingist; (2) denying his motion for a continuance; (3) denying his motion for acquittal based on insufficiency of the evidence; (4) calculating his base offense level at 38; (5) determining that he had not accepted responsibility for his participation in the conspiracy; (6) deciding that he was a minor

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

participant in the conspiracy; and (7) denying him a reduced sentence under an "aberrant behavior" theory.

I

On January 21, 1995, a Toyota Previa minivan was stopped in Kansas. The police discovered 111 kilograms of cocaine in a hidden compartment beneath the floor of the van. An electronic organizer belonging to Imelda Gonzalez, a passenger in the van, was also found. It contained defendant Parker's telephone number. The title to the van listed a mailbox address rented by the defendant. Two days later, a similar minivan was stopped in Tennessee, and was found to contain 102 kilograms of cocaine in a similar compartment.

At trial, the defendant admitted that on at least six or seven occasions over a two year period he drove Previa vans containing concealed compartments from Los Angeles to New York. He testified that he did this at the request of a friend, Thelma Wingist, and that she paid him a total of around $30-40,000 for making these trips. According to the defendant, he never saw the vans being loaded or unloaded, and Wingist told him the compartments contained "money and securities." Defendant claims he believed this explanation until making one trip in early December 1995, during which he smelt a strong formaldehyde-like odor emanating from the van and became suspicious that he might be transporting drugs. Defendant claims to have filed tax returns stating the income he made from his van trips for Ms. Wingist; however, a representative of the Internal Revenue

2

Service testified that no tax returns for the relevant period were received from the defendant.

Ms. Gonzalez testified that Ms. Wingist hired her to drive vans from Los Angeles to New York and back, and indicated that she made around ten trips. Subsequently, at Wingist's request, she managed driving schedules for vans driven by other drivers. Ms. Gonzalez testified that although she was never told what was being transported in the vans, she suspected it was drugs. Trip schedules maintained by Ms. Gonzalez indicated that she arranged two van trips made by the defendant.

## II

Ms. Wingist was originally to be tried with the defendant. Shortly before trial, however, the district court granted Ms. Wingist severance for medical reasons. Defendant then filed a petition for a writ of habeas corpus ad testificandum directed to Ms. Wingist, in order to secure her testimony at trial. Defendant contends that the district court's denial of that writ violated his Sixth Amendment right to offer the testimony of a witness.

To establish such a violation, a defendant must "make some plausible showing of how [the potential witness's] testimony would have been both material and favorable to his defense." United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982). We review a district court's denial of a writ of habeas corpus ad testificandum for abuse of discretion. Brady v. United States, 433 F.2d 924, 925 (10th Cir. 1970). The district court

denied defendant the writ for two reasons: first, that there was no indication that Ms. Wingist's testimony would assist the defendant; second, that there was no indication that Ms. Wingist, an alleged co-conspirator, was willing to waive her Fifth Amendment right against self-incrimination. We conclude that the first of these reasons is sufficient to show that the district court's denial of the writ was not abusive, and consequently do not address the merits of the second reason.

Attached to defendant's writ was an affidavit from Richard J. Diaz, Ms. Wingist's attorney, stating that "Thelma Wingist, cannot confirm that her co-defendant, Irving Parker, ever knowingly participated in any drug conspiracy." I R. doc. 201, at 9. The affidavit also stated that, were she called, Ms. Wingist would testify in a manner consistent with this statement. Defendant claims that Ms. Wingist's testimony would therefore bolster his contention that he never knowingly participated in a conspiracy to distribute drugs. Thus her testimony would have been both material and favorable, and the writ should have been granted. We disagree. Defendant must do more than produce an attorney's affidavit stating that a potential defense witness "cannot confirm" the prosecution's allegations. We have no statement from Ms. Wingist herself, nor any substantive indication that her testimony would be anything other than neutral. The possibility that Ms. Wingist's testimony could be both material and favorable is simply too speculative for us to find that the district court abused its discretion in denying defendant's writ.

4

III

In the alternative to a writ of habeas corpus ad testificandum, defendant brought a motion for continuance to enable him to procure Ms. Wingist's testimony. He now appeals the district court's denial of that motion. We review the district court's decision for abuse of discretion, and "do not reverse unless we conclude that the denial was arbitrary or unreasonable and materially prejudiced the appellant." United States v. West, 828 F.2d 1468, 1469 (10th Cir. 1987).

Although this court examines various factors in determining whether the denial of a continuance is an abuse of discretion, "by far the most important . . . is the defendant's need for a continuance and the prejudice resulting from its denial." Id. at 1471. Defendant has not shown more than the merest speculation of prejudice. Mr. Diaz's affidavit does not indicate that Ms. Wingist's testimony would have proven exculpatory. In fact, it states only that she could not have confirmed defendant's knowing participation in the conspiracy. The district court was well within the bounds of its discretion in concluding so neutral a statement does not provide sufficient grounds for a continuance.

IV

Defendant also appeals the district court's denial of his motion for a judgment of acquittal for insufficiency of the evidence. A motion for such judgment is properly denied if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). We review

5

the denial of this motion de novo, United States v. Chavez-Palacios, 30 F.3d 1290, 1294 (10th Cir. 1994), viewing "the direct and circumstantial evidence, along with reasonable inferences therefrom . . . in a light most favorable to the government," United States v. Mains, 33 F.3d 1222, 1227 (10th Cir. 1994). "Although this standard of review is deferential, we may not uphold a conviction obtained by piling inference upon inference." United States v. Hanson, 41 F.3d 580, 582 (10th Cir. 1994) (quotations omitted).

Under this deferential standard of review, we cannot grant a judgment of acquittal. There are four essential elements to conspiracy: first, agreement with another person to violate the law; second, knowledge of the essential objectives of the conspiracy; third, knowing and voluntary involvement; and fourth, interdependence among the alleged conspirators. See United States v. Nieto, 60 F.3d 1464, 1469 (10th Cir. 1995) (citing United States v. Johnson, 12 F.3d 1540, 1545 (10th Cir. 1993)). In conspiracy cases, "[a] defendant's guilty knowledge and voluntary participation may be inferred from surrounding circumstances." United States v. Christian, 786 F.2d 203, 211 (10th Cir. 1986); see also United States v. Pack, 773 F.2d 261, 265-66 (10th Cir. 1985) ("[A] common purpose or agreement to accomplish an unlawful objective may be inferred from a development and collocation of circumstances."); United States v. Troutman, 814 F.2d 1428, 1446-47 (10th Cir. 1987) ("Conspiracy cases may be proven exclusively by circumstantial evidence.").

There is no shortage of circumstantial evidence in this case indicating the defendant's knowing involvement in illegal activity. He knew the vans had hidden compartments. He admitted he was paid roughly $35,000 for driving the vans across the country a few times; indeed, the final few times he was paid $9,000 per trip. On some occasions he was paid in cash in shopping bags. An IRS official testified that Parker did not declare this income on his tax returns despite his protestations to the contrary.

In addition, the record contains circumstantial evidence that would allow a rational jury to find beyond a reasonable doubt that Parker knew the essential objective of the conspiracy to be the distribution of controlled substances.[1] When asked whether he had any familiarity "with patterns in drug trafficking or activities employed by drug traffickers," Parker at the outset of his testimony answered "yes and no" and explained

---

[1]Although the indictment charged Parker with conspiracy to distribute cocaine, and he was convicted of that same offense, the charge was brought pursuant to 21 U.S.C. § 841(a)(1), which states only that "it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense . . . a controlled substance." (Emphasis added). We review for sufficiency of the evidence under this statutory standard regardless of whether a defendant was convicted of a drug-specific violation of § 841(a)(1). See United States v. Johnson, 57 F.3d 968, 971-72 (10th Cir. 1995); see also United States v. Cheung, 836 F.2d 729, 731(1st Cir. 1988) (to prove violation of § 841(a)(1), government need not prove defendant knew exact substance with which he was dealing; it is sufficient that defendant was aware that he was dealing with some controlled substance); United States v. Gonzalez, 700 F.2d 196, 200 (5th Cir. 1983) (same); United States v. Morales, 577 F.2d 769, 775-76 (2d. Cir. 1978) (same); United States v. Jewell, 532 F.2d 697, 698 (9th Cir. 1976) (same); cf. United States v. Harris, 959 F.2d 246, 259 (D.C. Cir. 1991) (approving rule identified in cases above); United States v. Herrero, 893 F.2d 1512, 1534-35 (7th Cir. 1990) (conviction in drug conspiracy case only requires knowledge that co-conspirator dealt with a controlled substance, not knowledge pertaining to specifically-identified narcotic).

that he had worked with Miami customs in devising an over-the-air decoder to decode the paging traffic of suspected drug smugglers. IV R. at 747. Although Parker testified that he thought he was transporting money and securities in secret, the jury could legitimately infer that the explanation was a ruse to allay suspicion of narcotics trafficking. According to Ms. Gonzalez, Parker told her that "in case Lisa [Parker's secretary] started questioning him being absent from his office when he was making the trips, he was gonna say something about transporting . . . money from California."[2] II R. at 293. By Parker's own admission, he became suspicious that he was involved in a drug conspiracy in part because of a formaldehyde-like chemical odor permeating through the van during what he alleges was his final trip. Thus, Parker conceded not merely that he smelled this odor, but

---

[2]Ms. Gonzalez's precise testimony was as follows:

Q: He told you what?
A: Okay. I never asked him, but he told me that he was gonna, just—I do not remember his exact words, but he said that he was, in case Lisa started questioning him being absent from his office when he was making the trips, he was gonna say something about transporting or, I don't know what word he used, money from California to, I don't know if he said New York either, I don't know. I don't remember the exact words. But that was what he was gonna tell her.
Q: That's what he was gonna tell who?
A: Lisa.
Q: Now, did he tell you that that's what he believed he was doing?
A: No.
Q: But that was the story he was gonna give to Lisa his secretary?
A: Yes.

II R. at 293-94.

that he knew that chemical odors of that type could be used as masking agents to conceal quantities of controlled substances. As a consequence, the jury could legitimately infer that he in fact knew the narcotics focus of the conspiracy, at least with respect to what he alleges was his final trip. Moreover, because Parker's connection with the conspiracy clearly lasted beyond the time from which this latter inference may legitimately be made, his knowing involvement with the conspiracy is established by sufficient evidence.

V

Defendant argues that his base offense level should not have been calculated at 38 because there was no showing that the requisite 150 kilograms of cocaine were attributable to him. We review the district court's determination of drug quantities for clear error, United States v. Browning, 61 F.3d 752, 754 (10th Cir. 1995), cognizant that for sentencing purposes the government has the burden of proving drug quantities by a preponderance. United States v. Wacker, 72 F.3d 1453, 1477 (10th Cir. 1995). Under this standard of review, defendant's claim is without merit.

Two of the vans that were stopped each contained over 100 kilos of cocaine. The district court therefore possessed the necessary indicia of reliability for its estimate that approximately 100 kilos were transported on each trip. See Browning, 61 F.3d at 754. Because defendant admitted to at least six trips, it was not clear error to attribute at least 150 kilos to him—even accepting, for the sake of argument, his contention that some of the trips may have been "dry runs."

9

Defendant claims that the jury may have convicted him solely on the basis of his final trip. Although that may be true, his earlier trips count as "relevant conduct" for sentencing purposes if a preponderance of the evidence indicates that the conspiracy extended to such trips. See USSG § 1B1.3; United States v. Gomez-Arrellano, 5 F.3d 464, 466 (10th Cir. 1993). The district court so held. We see no basis to disturb that finding as clearly erroneous. Reviewing the entire record, we agree with the district court's conclusion that "it would be inconsistent with the evidence for the court to find that the only time that Mr. Parker took cocaine from California to the east coast was on this particular occasion." IV R. at 1092.

VI

We review for clear error the district court's denial of a sentencing level reduction for acceptance of responsibility. United States v. Portillo-Valenzuela, 20 F.3d 393, 394 (10th Cir. 1994). The defendant must establish his acceptance of responsibility by a preponderance of the evidence. Id. The district's court's decision that he did not do so is entitled to "great deference." United States v. Gacnik, 50 F.3d 848, 853 (10th Cir. 1995); see also USSG § 3E1.1, comment. (n. 5) ("[S]entencing judge is in a unique position to evaluate the defendant's acceptance of responsibility," and accordingly that determination "is entitled to great deference.").

Although it is not necessary to plead guilty in order to qualify for a sentence reduction for acceptance of responsibility pursuant to USSG § 3E1.1, a defendant who

10

puts the government to the burden of trial will rarely qualify for the reduction. Portillo-Valenzuela, 20 F.3d at 394; see also USSG § 3E1.1, comment. (n. 2). For instance, a defendant who goes to trial to preserve an issue that does not relate to "factual guilt," such as a constitutional challenge to the application of a statute, may still claim to have accepted responsibility. See USSG § 3E1.1, comment. (n.2). Mr. Parker does not fall into this narrow exception as he refused at trial to admit to a critical factual element of the offense—knowing involvement.

That the defendant admitted to some—if not most—factual elements of guilt does not entitle him to a sentence reduction for acceptance of responsibility. In Portillo-Valenzuela, the defendant confessed pre-trial, but subsequently insisted on pleading not guilty. 20 F.3d at 394. Although the defendant in that case argued that his confession meant the government's burden had been reduced to a "mere formality," the Portillo-Valenzuela court was unimpressed: "Pleading not guilty and requiring the government to prove guilt at trial demonstrate denial of responsibility, regardless of how easily the government can prove guilt." Id. at 394-95.

Nor is the defendant entitled to an acceptance of responsibility reduction because of his pre-trial assistance to the government. See USSG § 3E1.1, comment. (n. 6). The district court correctly found that Parker was not eligible for acceptance of responsibility on this basis because the information he provided was, in critical respects, determined to be untruthful. See Gacnik, 50 F.3d at 853 (defendant who pleads not guilty and is "far

11

from truthful in admitting conduct comprising the offense" has not shown acceptance of responsibility). Credibility determinations of this type are well within the province of the district court. See USSG § 3E1.1, comment. (n. 5); Willner v. University of Kansas, 848 F.2d 1023, 1030 (10th Cir. 1988).[3]

VII

Defendant challenges the district court's decision that he was a "minor participant" in the conspiracy. A district court's determination of whether a defendant was a "minor" or "minimal" participant in an offense is reviewed for clear error. United States v. Lockhart, 37 F.3d 1451, 1455 (10th Cir. 1994). A defendant is required to establish that he was a minimal or minor participant by a preponderance of the evidence. United States v. Occhipinti, 998 F.2d 791, 802 (10th Cir. 1993). The district court held that Parker was a minor, but not a minimal participant. Thus he was entitled only to a two-level reduction. Were he only a minimal participant, he would have obtained a four-level reduction; if his participation were between minor and minimal, a three-level reduction. See USSG § 3B1.2.

The four-level reduction for minimal participation is to be used infrequently. United States v. Santistevan, 39 F.3d 250, 254 (10th Cir. 1994); USSG § 3B1.2, comment. (n. 2). The example cited in the application notes to the guideline provision

---

[3]Because the defendant did not establish his acceptance of responsibility under § 3E1.1(a), he is per se ineligible for an additional one-point reduction under § 3E1.1(b). See Portillo-Valenzuela, 20 F.3d at 395.

make clear that the defendant is not a minimal participant. See § 3B1.2, comment. (n. 2) (minimal participant is, for instance, "someone who played no other role in a very large drug smuggling operation than to off-load part of a single marihuana shipment, or . . . where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs."). Thus, defendant's claim for minimal participant status essentially repeats his claim that he may only have been convicted on the basis of his final trip. As noted previously, that may be true, but it is nonetheless irrelevant for sentencing purposes. It was not clear error for the district court to determine that a preponderance of the evidence showed that defendant made more than one drug shipment, and that his participation could not therefore be minimal.

Alternatively, defendant claims he is entitled to a three-level reduction because his conduct falls between minimal and minor participation. We cannot agree. This court has affirmed denials of minor participant status on facts attesting to less involvement than present here. See, e.g., United States v. Montoya, 24 F.3d 1248, 1249 (10th Cir. 1994) (not error to hold that involvement in more than a single drug transaction placed defendant beyond scope of § 3B1.2); United States v. Ballard, 16 F.3d 1110, 1115 (10th Cir. 1994) (not error to hold that drug courier was not minor participant).

VIII

Finally, defendant argues that the district court should have departed downward from the guidelines because his criminal conduct amounted to "aberrant behavior." See

13

United States v. Tsosie, 14 F.3d 1438 (10th Cir. 1994). The defendant is correct in claiming that aberrational behavior can constitute a mitigating circumstance not adequately taken into account by the guidelines, and can therefore justify a departure from the guidelines. See 18 U.S.C. § 3553(b); Tsosie, 14 F.3d at 1441-42 (upholding district court determination that defendant's lack of prior convictions, economic support of his family, and long-term employment history justified departure under rubric of "aberrant behavior").

The defendant contends that his lack of criminal history and record of employment indicate that his criminal conduct was sufficiently aberrational to justify a departure from the sentencing guidelines under Tsosie.[4] The district court did not deny the requested departure in its discretion. Instead, the court held that it lacked discretion to depart downward because the factors defendant cited are taken into consideration by the sentencing guidelines in setting a defendant's criminal history.

We do not address the merits of this decision because the district court also ruled that the factors cited by defendant were not mitigating. Thus, even if not fully addressed by the guidelines, these factors would not justify a departure under Tsosie or other "aberrational behavior" cases. Defendant has given us no persuasive reason to regard the

---

[4] By implication, defendant adds economic support for his family and community reputation for honesty as additional factors justifying a departure. With regard to these factors, however, there is no indication that the district court was unaware "of its discretionary power to depart downward [and we therefore] lack jurisdiction to review its refusal to do so." United States v. McKneely, 69 F.3d 1067, 1079 (10th Cir. 1995).

14

district court's decision that such factors were not mitigating in his case as clearly erroneous. See United States v. Haggerty, 4 F.3d 901, 903 (10th Cir. 1993) (determination whether factors not adequately addressed by sentencing guidelines are mitigating is factual); 18 U.S.C. § 3742(e) (West Supp. 1996) (factual determinations relevant to sentencing reviewed for clear error). Consequently, we will not disturb the district court's denial of a reduction for aberrational behavior.

IX

None of defendant's challenges to his conviction or sentence are meritorious. The district court acted within its discretion in denying his writ of habeas corpus ad testificandum and his motion for continuance. Judgment of acquittal for insufficiency of the evidence was properly denied. The district court did not err in calculating defendant's base offense level, nor in refusing sentence reductions for acceptance of responsibility, minimal participant status, or aberrational behavior. AFFIRMED.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge