UNITED STATES of America, Appellee,

v.

Edgar MONTOYA, Defendant, Appellant.

No. 91–1537.

United States Court of Appeals,
First Circuit.

Heard Feb. 6, 1992.

Decided June 8, 1992.

Rehearing Denied July 20, 1992.

J. Michael McGuinness, with whom McGuinness & Parlagreco, North Reading, Mass., was on brief for defendant, appellant.

F. Mark Terison, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., Portland, Me., was on brief for appellee.

Before TORRUELLA, Circuit Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

Edgar Montoya pled guilty to one count of possessing cocaine, with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). On appeal, Montoya attempts to challenge the constitutionality and reliability of the district court's application of the "relevant conduct" guideline, see U.S.S.G. § 1B1.3,[1] which resulted in a determination that Montoya was responsible for 1,270.5 grams of cocaine, as set forth in the presentence report. Montoya claims that the sixty-three month sentence imposed by the district court violates the Fifth and Sixth

---

1. For drug offenses such as the one to which Montoya pled guilty, § 1B1.3 provides that the base offense level shall be determined on the basis of "all such acts and omissions that were part of the same course of conduct or common

**2**

Amendments.[2]

## 1. Sixth Amendment Claim

■ Montoya asserts on appeal, for the first time, that he was denied the right to confront the witnesses against him, since the government's evidence at sentencing principally consisted of hearsay testimony from a law enforcement officer as to what Montoya's criminal associates, turned government informants, said were the quantities of cocaine for which Montoya was responsible. At no time did Montoya raise the Sixth Amendment claim in the district court,[3] or attempt to call any declarant whose accusatory statements on the relevant conduct issue formed the basis for the hearsay relied on by the district court. As it is well established that reliable hearsay is admissible at sentencing, U.S.S.G. § 6A1.3(a), p.s.; *see, e.g., United States v. Figaro*, 935 F.2d 4, 8 (1st Cir. 1991) ("reliability" is the essential evidentiary requirement at sentencing), defense counsel's conclusory allusion to "the hearsay nature of [one criminal associate's statements about the cocaine] quantities" did not fairly alert the district court to a Sixth Amendment "confrontation" claim.[4] As we deem any Sixth Amendment claim to have been waived, *see United States v.*

*Dietz*, 950 F.2d 50, 55 (1st Cir.1991) (challenges to guideline sentence cannot be raised for first time on appeal) (collecting cases), we need not consider whether the Sixth Amendment right to confrontation is implicated in guideline sentencing proceedings.[5]

## 2. Fifth Amendment Due Process Claim

■ Montoya attempts, again for the first time, to assert a Fifth Amendment due process claim based on the alleged unreliability of the informants' estimates of the quantities of cocaine for which he was determined responsible under the "relevant conduct" guideline. *See United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 592, 30 L.Ed.2d 592 (1972); *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948). Although the due process claim was waived as well, as part of our "plain error" analysis we nonetheless consider whether the information relied on by the district court in its "relevant conduct" determination was sufficiently reliable to avert any fundamental unfairness in the sentencing of Montoya. *See United States v. Nickens*, 955 F.2d 112, 118 (1st Cir.1992) (quoting *United States v. Griffin*, 818 F.2d 97, 100 (1st Cir.), *cert. denied*, 484 U.S. 844, 108 S.Ct.

---

scheme or plan as the offense of conviction...." U.S.S.G. § 1B1.3(a)(2).

2. The guideline sentencing range was 51 to 63 months, based on a base offense level of 26, *see* U.S.S.G. § 2D1.1(c)(9) (1,270.5 grams of cocaine), an offense level of 24 (two-point reduction for acceptance of responsibility, *see id.* § 3E1.1), and a category I criminal history.

3. Montoya does not intimate that there was any lack of opportunity to raise or establish these constitutional claims below. On May 6, 1991, following a conference with counsel, the district court issued an order scheduling the sentencing hearing for May 23, and expressly listing "the proper drug quantity" as one of the three disputed matters to be resolved at sentencing. The order directed the parties and counsel "to be prepared to present any *evidence* relevant to sentencing issues." (emphasis added). The evidentiary hearing appears to have been scheduled in response to a letter from Montoya's attorney to the probation officer, alleging that the informants had lied to government agents in stating that Montoya had taken part in any drug transaction other than that charged in the indictment.

4. Absent any request or attempt to call the declarants, Murphy and Stanley, defense counsel's one conclusory reference to hearsay at best would have been interpreted as a challenge to the accuracy of the estimates.

5. There appears to be some division among the courts of appeals which have considered the issue. *Compare, e.g., United States v. Kikumura*, 918 F.2d 1084, 1102–03 & n. 19 (3d Cir.1990) (declining to apply confrontation clause to guideline sentencing); *United States v. Reid*, 911 F.2d 1456, 1464 (10th Cir.1990), *cert. denied*, ── U.S. ──, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991); *United States v. Marshall*, 910 F.2d 1241, 1244 (5th Cir.1990), *cert. denied*, ── U.S. ──, 111 S.Ct. 976, 112 L.Ed.2d 1061 (1991), *with United States v. Silverman*, 945 F.2d 1337, 1343–46 (6th Cir.1991) (confrontation clause applies to guideline sentencing), *vacated, reh'g en banc granted* (Dec. 4, 1991); *United States v. Fortier*, 911 F.2d 100, 103 (8th Cir.1990); *United States v. Wise*, 923 F.2d 86 (8th Cir.1991), *vacated, reh'g en banc granted* (Mar. 15, 1991).

137, 98 L.Ed.2d 94 (1987)), *petition for cert. filed* (U.S. Apr. 27, 1992) (No. 91–8104).[6]

The sentencing judge is vested with wide discretion to determine the information on which sentencing guideline decisions will be based, *Figaro*, 935 F.2d at 8, and may consider reliable hearsay evidence. *See United States v. Aymelek*, 926 F.2d 64, 68 (1st Cir.1991); *United States v. Zuleta–Alvarez*, 922 F.2d 33, 36–37 (1st Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2039, 114 L.Ed.2d 123 (1991). The hearsay testimony presented at the sentencing hearing by Drug Enforcement Agent Henry O'Donoghue, relaying the cocaine quantity estimates made by Murphy and Stanley, was not only correctly considered competent for sentencing purposes, *see, e.g., United States v. Chavez*, 947 F.2d 742, 746 (5th Cir.1991); *United States v. Jewel*, 947 F.2d 224, 236–38 (7th Cir.1991), but was fairly and reasonably treated as reliable. The district court credited O'Donoghue's hearsay testimony only after an evidentiary hearing at which Montoya was entitled to submit evidence, testify, and call other witnesses, including the nonconfidential informants whose first-hand knowledge was at issue.[7] Where a defendant fails even to request an opportunity to present the testimony of a nonconfidential informant-declarant whose statements are presented in the form of hearsay testimony, the "plain error" hurdle looms large.

Montoya settled for a thorough cross-examination of Agent O'Donoghue. Defense counsel elicited the self-serving nature of the informants' cooperation with the government and the opportunities the informants would have had to conform their "stories" before implicating Montoya in the "relevant conduct" to which O'Donoghue testified. *See United States v. Rodriguez–Luna*, 937 F.2d 1208, 1212 n. 4 (7th Cir.1991) (defendant discredits hearsay declarant through cross-examination of witnesses at sentencing). Nevertheless, a careful review of the record reveals no significant basis for doubting the reliability of Agent O'Donoghue's hearsay testimony as to the information provided by Murphy.

The district court supportably found that Montoya had been "reliably identified by two cooperating informants as a supplier of cocaine for numerous other drug transactions." The Presentence Report ("PSR") represents, and Montoya does not dispute, that the four-ounce cocaine transaction to which he pled guilty was arranged over the telephone in less than two days by Murphy.[8] It would be reasonable to infer that covert drug transactions normally are not so readily arranged between "strangers" to the drug business. In any event, the district court was not required to discard common sense and credit the bald assertion by Montoya's counsel (in opposition to the PSR) to the effect that the four-ounce cocaine transaction was the only cocaine deal ever conducted by Montoya and Murphy. *See United States v. Sklar*, 920 F.2d 107, 112 (1st Cir.1990) (court need not "divorce [itself] from common sense").

The accuracy of the cocaine quantities for which Montoya was sentenced under

---

6. Every criminal sentence must, of course, "be based on information which has 'sufficient indicia of reliability to support its probable accuracy[,]' " *Figaro*, 935 F.2d at 8 (quoting U.S.S.G. § 6A1.3); *see also United States v. Zuleta–Alvarez*, 922 F.2d 33, 36 (1st Cir.1990) (sentencing court must "make an independent determination as to the reliability of the evidence presented by the government"), *cert. denied*, —— U.S. ——, 111 S.Ct. 2039, 114 L.Ed.2d 123 (1991), but the sentencing judge is vested with "wide discretion" to determine sentencing information reliability, *United States v. Iguaran–Palmar*, 926 F.2d 7, 10 (1st Cir.1991).

7. Montoya never attempted to interview the declarants, nor did he ever request their appearance or seek to subpoena them. *Cf. Zuleta–*

*Alvarez*, 922 F.2d at 36 (upholding, in similar circumstances, denial of belated request to require witnesses to appear for cross-examination at sentencing). At oral argument, Montoya contended that any attempt by trial counsel to have the declarants made available at the sentencing hearing would have been tantamount to ineffective assistance. Since it assumes that presentation of the declarants' testimony would have been damaging to Montoya, we do not believe this contention fosters Montoya's claim that the hearsay testimony presented by Agent O'Donoghue was unreliable.

8. Significantly, Agent O'Donoghue testified that Murphy's telephone conversations with Montoya about their *previous* cocaine transactions were recorded.

the "relevant conduct" guideline depended on other information provided by informant Murphy. According to the PSR, Murphy informed DEA agents that he had purchased between two and five ounces of cocaine per week from Montoya during the July–September 1990 period. Although the Murphy–Montoya "sting" transaction in December 1990 involved four ounces, the district court calculation conservatively credited only the lower, two-ounce estimate for each of these twelve weeks (a total of 680.4 grams). Similar estimates have been credited and upheld for guideline sentencing determinations when based on a preponderance of the reliable evidence.[9] *See Zuleta–Alvarez,* 922 F.2d at 37 ("preponderance of evidence" standard).[10]

Although he disputed the PSR "relevant conduct" calculation based on the information provided by informant Murphy, Montoya offered no evidence to suggest that Murphy's information was inaccurate. In the face of defense counsel's bald representation at sentencing—that Murphy "grossly overstated" any amounts of cocaine "he may have received" from Montoya—the

"relevant conduct" findings by the district court, based as they were on sufficiently reliable hearsay, cannot be considered error, let alone clear error, *see Zuleta–Alvarez,* 922 F.2d at 37 (findings reviewed for clear error), or a miscarriage of justice amounting to "plain error."

### 3. *Conclusion*

Montoya was given every reasonable opportunity to challenge all "relevant conduct" evidence material to the sentence imposed by the district court. We are unpersuaded that the district court improperly sentenced Montoya either on the basis of unreliable information or on the strength of any erroneous finding of fact or conclusion of law.[11]

*The district court judgment is affirmed.*

---

9. *See United States v. Cook,* 949 F.2d 289, 296 & n. 2 (10th Cir.1991) (upholding drug quantity calculation based on low estimate of value of cocaine codefendant said was being sold daily); *United States v. Frondle,* 918 F.2d 62, 63–5 & n. 3 (8th Cir.1990) (upholding attribution to defendant of 3 kilograms based on coconspirator's testimony that defendant had been "fronted" between two and four kilograms during period), *cert. denied,* —— U.S. ——, 111 S.Ct. 1400, 113 L.Ed.2d 455 (1991); *see also United States v. Cousineau,* 929 F.2d 64, 67 (2d Cir.1991) (upholding calculation based on testimony of customers who purchased cocaine from defendant); *United States v. Easterling,* 921 F.2d 1073, 1077–78 (10th Cir.1990) (upholding calculation based on probation officer's testimony that two purchasers interviewed by government agent admitted they had each purchased an estimated two pounds of methamphetamines), *cert. denied,* —— U.S. ——, 111 S.Ct. 2066, 114 L.Ed.2d 470 (1991); *cf. United States v. Phillippi,* 911 F.2d 149, 151 (8th Cir.1990) (excluding amounts for which testimony of informant "did not clearly establish either the dates on which [ ] deliveries were made or the amounts of cocaine delivered...."), *cert. denied,* —— U.S. ——, 111 S.Ct. 702, 112 L.Ed.2d 691 (1991).

Although it has been recognized that evidence of drug quantities must possess some indicia of reliability beyond mere allegation, *see, e.g., United States v. West,* 948 F.2d 1042, 1045 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1209, 117 L.Ed.2d 447 (1992); *United States v. Reid,* 911 F.2d 1456, 1464 (10th Cir.1990) (dis-

cussing hearsay statements in particular), *cert. denied,* —— U.S. ——, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991), contrary to the assertion made by Montoya (for the first time on appeal), we know of no gloss on the reliability requirement that would require "at least some direct proof" for reliable drug volume quantification under the "relevant conduct" guideline.

10. Montoya's offense level calculation was based on the district court's finding that his relevant conduct, combined with the 113.4 grams involved in the offense of conviction, totalled 1,270.5 grams, and that the "relevant conduct" category of 500 grams to two kilograms was therefore applicable. Thus, only a portion of the 680.4 grams discussed in the text, *supra* at 7, and none of the remaining amounts credited by the district court, need have been substantiated by a preponderance of reliable evidence in order for the "relevant conduct" determination to stand.

11. Montoya points out that he pled guilty to an indictment which charged only a December 18, 1990 cocaine possession, with intent to distribute. *See* 21 U.S.C. §§ 841(a)(1) & (b)(1)(C). He argues that the sentence imposed by the district court violated the plea agreement. Under the plea agreement, the maximum sentence was 20 years' imprisonment and both parties were free to urge "the imposition of any lawful sentence." We find no breach. *See United States v. Fox,* 889 F.2d 357 (1st Cir.1989) (defendant agreed to

plead guilty to one charge of making a fictitious
loan, but "relevant conduct" included four un-
charged fraudulent loans); *see also United
States v. Camuti,* 950 F.2d 72, 75 n. 3 (1st
Cir.1991) (sentencing calculation may include

conduct underlying dismissed counts) (citing
cases).

