UNITED STATES of America, Appellee,

v.

David LIEBMAN, Defendant–Appellant.

No. 776, Docket 93–1511.

United States Court of Appeals, Second Circuit.

Argued Jan. 14, 1994.

Decided Nov. 10, 1994.

---

Hubert J. Santos, Hartford, CT (Hope C. Seeley, Santos, Peck & Smith, P.C., of counsel), for defendant-appellant.

Sharon E. Jaffe, Asst. U.S. Atty., D. Conn., New Haven, CT (Christopher F. Droney, U.S. Atty., D.Conn. and Andrew E. Lauterback, Sp. Asst. U.S. Atty., of counsel), for appellee.

Before: MINER and MAHONEY, Circuit Judges, and RESTANI, Judge.*

MAHONEY, Circuit Judge:

Defendant-appellant David Liebman appeals from a judgment entered July 13, 1993 in the United States District Court for the District of Connecticut, Ellen Bree Burns, *Judge,* that sentenced him principally to ten months imprisonment and a $3,000.00 fine. Liebman had previously pled guilty to an information charging failure "to notify imme-

---

* The Honorable Jane A. Restani, of the United States Court of International Trade, sitting by

diately the appropriate agency of the United States Government" of a release of asbestos, a hazardous substance, in violation of 42 U.S.C. § 9603(b).

On appeal, Liebman challenges the district court's upward adjustments of his base offense level pursuant to USSG § 3B1.1(b) for Liebman's supervisory role in criminal activity that involved five or more participants or was otherwise extensive, and pursuant to *id.* § 2Q1.2(b)(1)(A) because the offense resulted in an ongoing and repetitive discharge of a hazardous or toxic substance. For the reasons that follow, we vacate Liebman's sentence and remand for resentencing.

### Background

David Liebman and his family were owners of a company that entered into an agreement for the sale of its mill in Rockville, Connecticut. After an environmental assessment of the mill revealed the presence of asbestos, Louis Lavitt, who had brokered the agreement, solicited bids from asbestos removal contractors for its removal. Most of the asbestos was located in or around the boiler room, where two large boilers and connected pipes were insulated with asbestos. On behalf of the Liebman family, Lavitt engaged William and Thomas Janiak, local salvagers, to remove the boilers. David Liebman maintains, however, that he believed that the removal of the boilers would not entail the removal of asbestos, and that should the need arise for asbestos removal, the Janiaks would obtain the necessary permits or certification.

The Janiaks, along with two teenage boys and a man in his twenties, removed the boilers over a period of six weeks in the summer of 1989. During the first three weeks, Lavitt paid the workers with money obtained from the Liebman family. During the second three weeks, however, Lavitt was no longer present because of a dispute with the Liebmans regarding skimming from the payments, and David Liebman paid the workers directly.

designation.

During and after the removal, the workers placed the asbestos into plastic bags and ultimately transported the bags in a rented truck to a gravel pit in the woods. The Janiaks were not licensed for asbestos removal, and the bags and dump site did not conform to regulatory standards. While there remains some dispute as to how much of the asbestos found in the gravel pit actually came from the Liebmans' mill (the government contends that over three tons belonged to the Liebmans), Liebman admits that three truckloads of bags were from his mill.

After the asbestos was traced back to the Liebman mill, David Liebman entered a guilty plea for failing to notify the appropriate federal agency of the release in violation of 42 U.S.C. § 9603(b). At the sentencing hearing, nonetheless, Liebman continued to maintain that he had been unaware that removal of the boilers would involve asbestos removal, at least at the time that Lavitt engaged the Janiaks and while Lavitt remained at the mill. He did concede, however, that he eventually became aware of the asbestos removal, yet failed to stop the Janiaks' work or to inform the appropriate agency of the release.

The district court made findings of fact and calculated Liebman's guidelines range at that hearing. Beginning with a base offense level of eight pursuant to USSG § 2Q1.2(a), the court determined that the offense resulted in an ongoing and repetitive discharge of toxic material, requiring an upward adjustment of six levels under § 2Q1.2(b)(1)(A). The court then found that Liebman was a supervisor of the criminal activity conducted by the removal team, rejecting the government's argument, as well as the recommendation in Liebman's presentence report, that he should be deemed an organizer of that activity. The court concluded that Liebman was not aware initially that removal of the boilers would involve the removal of asbestos, but opined that after Lavitt's departure, Liebman "had to know that something highly improper was going on and he should have stopped it." Therefore, under USSG § 3B1.1, an upward adjustment of either two or three levels was required, depending upon

the number of people that Liebman supervised or the extent of the supervised activity.

The court determined that subsection (b) applied because the criminal activity involved five or more participants or was otherwise extensive, and added three levels. Finally, the court subtracted three levels for acceptance of responsibility and departed downward two levels in response to a variety of family considerations urged by Liebman. This calculation resulted in a total offense level of 12, which, in conjunction with Criminal History Category I, produced a guidelines range of 10–16 months. The court then sentenced Liebman to ten months imprisonment, the minimum of that range, to be followed by a one-year term of supervised release, and imposed a fine of $3,000 and a mandatory special assessment of $50.

This appeal followed. Liebman is at liberty during the pendency of the appeal.

### Discussion

In reviewing the sentence imposed by the district court, we review the court's legal determinations *de novo* and accept the court's factual determinations unless they are clearly erroneous. *United States v. Echevarria*, 33 F.3d 175, 178 (2d Cir.1994); *see also United States v. Ferrin*, 994 F.2d 658, 662 (9th Cir.1993) (same, with respect to USSG § 2Q1.2(b)(1)); *United States v. Farah*, 991 F.2d 1065, 1068 (2d Cir.1993) (same, with respect to USSG § 3B1.1). We are mindful that disputed sentencing factors need only be proved by a preponderance of the evidence. *Echevarria*, 33 F.3d at 178.

A. *The Enhancement for Liebman's Role Pursuant to USSG § 3B1.1(b).*

Liebman contends that the record contains insufficient evidence to support the district court's finding under USSG § 3B1.1 that he was a supervisor or manager. He further argues that because the court failed to make a specific finding under subsection (b) as to whether the criminal activity involved five or more people or was otherwise extensive, it was improper to increase his base level by three levels pursuant to subsection (b), rather than two levels pursuant to subsection (c), of § 3B1.1.

Section 3B1.1, entitled "Aggravating Role," provides:

Based on the defendant's role in the offense, increase the offense level as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

■ The district court's finding that Liebman was a supervisor of a criminal activity is supported by the record. As several courts have noted, a manager or supervisor is one who "exercise[s] some degree of control over others involved in the commission of the offense." *United States v. Fuller,* 897 F.2d 1217, 1220 (1st Cir.1990); *see also United States v. Cantero,* 995 F.2d 1407, 1414 (7th Cir.1993) (same); USSG 3B1.1, comment. (n.2) ("To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants."). Liebman does not contest that after Lavitt left the mill, Liebman was responsible for overseeing the removal of the boilers. He paid the workers' salaries and admits that he had the authority and obligation to stop their work and notify the appropriate authorities of the release of asbestos.

Nevertheless, Liebman argues that: "Just because the Defendant knew what was going on and had an obligation to stop it does not establish that his contribution to the criminal activity was greater than any of the other participants or that he 'supervised' other participants by exercising some degree of control over them." Insofar as Liebman argues that he did not mastermind the illegal activity from the outset, the district court agreed with him and found that he was not an organizer or leader subject to a four-level enhancement pursuant to subsection (a) of § 3B1.1. *Cf. United States v. Parker,* 903

F.2d 91, 104 (2d Cir.) (defendant who planned details of robbery, recruited accomplices, assigned their roles, and controlled distribution of proceeds properly found to be an organizer), *cert. denied,* 498 U.S. 872, 874, 111 S.Ct. 196, 201, 112 L.Ed.2d 158, 162 (1990).

It is also clear, however, that Liebman exercised control over the workers; they worked for him, he paid them, and he could have prohibited their illegal activity. Liebman contends that prior cases in which we upheld a finding of supervisor or manager status involved more extensive activity than his. In *Farah,* for example, the defendant "oversaw every phase of the operations." 991 F.2d at 1069. We concluded in that case, however, that the defendant's activity placed him "squarely" within § 3B1.1(b). *Id.* In this case, Liebman was certainly in general charge of the workers conducting the asbestos removal once Lavitt left the scene. Even if Liebman's management of the details of that operation was less comprehensive than that of the *Farah* defendant, we would have no basis to conclude that Judge Burns committed clear error in assessing Liebman as a manager or supervisor of the Janiak team. *Cf. United States v. Cox,* 934 F.2d 1114, 1126 (10th Cir.1991) (four-level enhancement as leader or organizer appropriate when "extensive marijuana transfers took place at a business that defendant owned").

■ We agree, however, with Liebman's argument that he was not properly sentenced under subsection (b) of § 3B1.1, which requires a determination that Liebman supervised five or more participants in criminal activity, or that the activity was "otherwise extensive." A participant is "a person who is criminally responsible for the commission of the offense, but need not have been convicted." USSG § 3B1.1, comment. (n.1). Liebman contended before the district court that while a total of four people entered pleas of guilty in relation to the asbestos removal— David Liebman, Louis Lavitt, and the two Janiaks—the two teenagers bore no criminal responsibility. The government responded that the teenagers were aware that they

were removing asbestos, and therefore were participants.

Liebman further contended that the "otherwise extensive" provision applies to far-reaching criminal enterprises, but does not encompass "the removal of asbestos from a boiler room." In support of this argument, he pointed to the use of the word "organization" in the relevant application note, which states:

> In assessing whether an organization is "otherwise extensive," all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive.

USSG § 3B1.1, comment. (n.3).

█ The district court determined that § 3B1.1(b) established the appropriate level, but did not make any specific findings in support of that determination. Under our precedents, this ruling was erroneous and requires a remand for specific findings as to whether the requirements of § 3B1.1(b) were satisfied. *See United States v. Fermin,* 32 F.3d 674, 682 (2d Cir.1994); *United States v. Stevens,* 985 F.2d 1175, 1184–85 (2d Cir. 1993); *United States v. Lanese,* 890 F.2d 1284, 1294 (2d Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2207, 109 L.Ed.2d 533 (1990). We note that if the district court reaches the issue whether the criminal activity was otherwise extensive, we disagree with Liebman's contention that the criminal activity must involve a formal "organization." We believe that in using the term "organization" in the commentary, the drafters did not intend to restrict the scope of the guideline to structured enterprises. It is more likely that they chose the word as a term of convenience, to denote any association of people involved in criminal activity.

---

1. The remaining Specific Offense Characteristics are:

   (2) If the offense resulted in a substantial likelihood of death or serious bodily injury, increase by 9 levels.

   (3) If the offense resulted in disruption of public utilities or evacuation of a community, or if cleanup required a substantial expenditure, increase by 4 levels.

## B. *The Enhancement for an Ongoing Discharge Pursuant to USSG § 2Q1.2(b)(1)(A).*

Liebman presents two arguments in support of his contention that the district court erred in imposing a six-level enhancement of his base offense level pursuant to USSG § 2Q1.2(b)(1)(A) for an ongoing and repetitive discharge of asbestos into the environment. First, he argues that an application note to this section requires a finding of "actual environmental contamination" in support of an enhancement under § 2Q1.2(b)(1), and that the government did not provide evidence to support such a finding. Second, invoking the background note to § 2Q1.2, he contends that this enhancement applies only to substantive offenses, and therefore not to the recordkeeping offense to which he pled guilty. We address these arguments in turn.

Section 2Q1.2, entitled "Mishandling of Hazardous or Toxic Substances or Pesticides; Recordkeeping, Tampering, and Falsification; Unlawfully Transporting Hazardous Materials in Commerce," lists in subsection (b) six "Specific Offense Characteristics" that are used to increase or decrease the base offense level of eight, set forth in subsection (a). Section 2Q1.2(b)(1), under which Liebman's sentence was enhanced, provides:

> (A) If the offense resulted in an *ongoing, continuous, or repetitive discharge, release, or emission* of a hazardous or toxic substance or pesticide *into the environment,* increase by 6 levels; or
>
> (B) if the offense otherwise involved a discharge, release, or emission of a hazardous or toxic substance or pesticide, increase by 4 levels.

*Id.* (emphasis added).[1]

The district court ruled as follows on this issue:

> (4) If the offense involved transportation, treatment, storage, or disposal without a permit or in violation of a permit, increase by 4 levels.
>
> (5) If a recordkeeping offense reflected an effort to conceal a substantive environmental offense, use the offense level for the substantive offense.

It is my belief that the assessment by the probation officer of the six levels is appropriate; that the offense here in terms of what was charged and pled to and the facts of the case suggest that this is in fact an offense resulting in an ongoing, continuous or repetitive discharge, release or emission of a hazardous or toxic substance.

I don't believe there's anyone who denies that asbestos emitted into the air is a hazardous or toxic substance and the period of time over which the release took place certainly is ongoing and repetitive.

So it's my belief that the six-level [enhancement] is correct but I decline to depart either upward or downward.

■ Liebman's first objection to this ruling is based upon the fifth application note to § 2Q1.2, which states:

> Subsection (b)(1) *assumes* a discharge or emission into the environment *resulting in actual environmental contamination.* A wide range of conduct, involving the handling of different quantities of materials with widely differing propensities, potentially is covered. Depending upon the harm resulting from the emission, release or discharge, the quantity and nature of the substance or pollutant, the duration of the offense and the risk associated with the violation, a departure of up to two levels in either direction from the offense levels prescribed in these specific offense characteristics may be appropriate.

USSG § 2Q1.2, comment. (n.5) (emphasis added). Liebman argues that: (1) this application note requires an explicit finding of "actual environmental contamination;" (2) the district court's determination does not constitute or include such a finding; and (3) the government introduced no evidence to support such a finding.

The government argued at sentencing that Liebman was responsible for three categories of releases. First, asbestos was released into the atmosphere every day during the six-week removal of the boilers from the mill. Second, the Janiaks then transported the trash bags filled with asbestos and dumped

them into the gravel pit. Finally, some of the trash bags broke open, releasing still more asbestos every day until they were discovered. The government also explained that asbestos is a proven human carcinogen, which can cause damage even at minute levels because the fibers are inhaled into the lungs.

Liebman does not contest this depiction, but contends that an additional, explicit showing of "actual environmental contamination" is mandated by the application note, and that the government failed to satisfy this requirement.

The Fifth Circuit rejected this theory in *United States v. Goldfaden*, 959 F.2d 1324 (5th Cir.1992), stating:

> At least three circuit courts, ours included, have discussed Appellant's theory that subsection (b)(1) requires the Government to prove environmental contamination. *See United States v. Irby*, 944 F.2d 902 (table) (4th Cir.1991) (unpublished); *United States v. Sellers*, 926 F.2d 410 (5th Cir.1991); *United States v. Bogas*, 920 F.2d 363 (6th Cir.1990). Because evidence was introduced from which the district court could either find or infer environmental contamination in each of these cases, however, the courts did not need to decide whether the commentary adds an additional requirement—proof of environmental contamination—to the guideline. *See Irby*, 1991 WL 179110 at *1, 1991 U.S.App. LEXIS 21687 at *1; *Sellers*, 926 F.2d at 418; *Bogas*, 920 F.2d at 368. We do not believe that it does. Rather, we interpret the commentary to explain that subsection (b)(1) takes environmental contamination as a given, but allows for upward or downward departures depending on the potency, size, or duration of the contamination. The absence of proof of actual environmental contamination, in this case, therefore, does not affect the propriety of the district court's enhancement for repetitive discharges.

*Id.* at 1330–31.

■ We agree with this analysis. The application note states the obvious—that

---

(6) If the offense involved a simple record-keeping or reporting violation only, decrease by 2 levels.

USSG § 2Q1.2(b).

when a hazardous or toxic substance is discharged into the environment, it will be assumed that contamination of that environment ordinarily ensues. *Cf. Ferrin,* 994 F.2d at 664 ("a finding that ... hazardous waste came into contact with land or water or was released into the air is the appropriate predicate for an enhancement under [§ 2Q1.2(b)(1)];" no enhancement imposed, however, because intervention of authorities prevented such contact or release). Alternatively, the district court was certainly entitled to infer in this case, and may be regarded as implicitly having inferred, that the conceded asbestos discharges inevitably resulted in contamination of the environment. *Cf. United States v. Strandquist,* 993 F.2d 395, 400 (4th Cir.1993) (district court permissibly "infer[red] environmental contamination from the discharges of raw sewage into [a] storm grate.").

We next consider Liebman's claim that he pled guilty only to a recordkeeping offense, and that the § 2Q1.2(b)(1)(A) enhancement is inapplicable to such offenses. He bases this argument upon the background note to § 2Q1.2, which states in pertinent part:

> This section applies both to substantive violations of the statute governing the handling of pesticides and toxic and hazardous substances and to recordkeeping offenses. The first four specific offense characteristics provide enhancements when the offense involved a substantive violation. The last two specific offense characteristics apply to recordkeeping offenses.

USSG § 2Q1.2, comment. (backg'd). Liebman contends that this note clearly precluded the district court's application of the first specific offense characteristic to the recordkeeping offense of which he was convicted.

■ The government contends that this argument is procedurally barred because Liebman did not present it to the district court, and Liebman concedes that he did not do so. "Generally, issues not raised in the trial court, including sentencing issues, will be deemed waived on appeal in the absence of '[p]lain errors or defects affecting substantial rights.'" *United States v. Keppler,* 2 F.3d 21, 23–24 (2d Cir.1993) (quoting Fed. R.Crim.P. 52(b)) (collecting cases). An exception was made for novel sentencing issues "'during the infancy of the Guidelines,'" *id.* at 24 (quoting *United States v. McCall,* 915 F.2d 811, 814 (2d Cir.1990)), a stage now outgrown. Nonetheless, an exception to the general rule may still be warranted for "novel or complex" sentencing issues. *Id.* So far as we can ascertain, the precise issue presented by Liebman has not been addressed in this circuit, or indeed in any reported decision. In addition, a remand is already required in this case by our resolution of the § 3B1.1 issue. Under these circumstances, we will address the merits of Liebman's belated challenge to the § 2Q1.2(b)(1)(A) enhancement.

■ The government maintains that Liebman can be held accountable, pursuant to USSG § 1B1.3, for the relevant conduct recited in the information to which he pled guilty, which included his "caus[ing] the removal, release, and disposal of substantial quantities of asbestos" from the Liebman mill in violation of federal law. Section 1B1.3 provides for relevant conduct to be considered when it "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." It would certainly strain this language to conclude that the removal, release, and disposal of the asbestos occurred "in preparation for" the failure to report the offense, or to avoid detection of that failure. On the other hand, although any specific release does not occur "during" the subsequent failure to report it, the repeated releases in this case could certainly be deemed to overlap the ongoing failure to report them, with the result that the substantive offenses occurred "during" the recordkeeping offense and should be regarded as conduct relevant thereto within the meaning of § 1B1.3(a)(1).

The fifth specific offense characteristic delineated in § 2Q1.2 addresses the situation more directly, however, and it is preferable to apply § 2Q1.2 to a situation that it specifically envisions rather than force a construction of § 1B1.3(a)(1) for the occasion. The background note to § 2Q1.2 states that "[t]he last two specific offense characteristics [i.e.,

the fifth and sixth] apply to recordkeeping offenses." The fifth of these provides: "If a recordkeeping offense reflected an effort to conceal a substantive environmental offense, use the offense level for the substantive offense." § 2Q1.2(b)(5); *see supra* note 1. Thus, the application of the § 2Q1.2(b)(1) specific offense characteristic to Liebman's recordkeeping offense is dependent upon a determination whether that offense "reflected an effort to conceal a substantive environmental offense."

Because this issue was never raised below, the sentencing proceedings never addressed the question whether Liebman's failure to report the environmental offenses in violation of 42 U.S.C. § 9603(b) reflected an effort to conceal them or some less culpable state of mind. The validity of the § 2Q1.2(b)(1)(A) six-level enhancement turns on this issue, which should accordingly be decided on remand.

### Conclusion

The judgment of conviction is affirmed; the sentence is vacated and the case is remanded for resentencing consistent with this opinion.