June 7, 1995 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

 

No. 94-1195
UNITED STATES OF AMERICA,

Appellee,

v.

GIACOMO D. CATUCCI,

Defendant, Appellant.

 

ERRATA SHEET

The opinion of this Court issued on May 24, 1995, is amended
as follows:

Cover sheet: change spelling of appellant's attorney's name
to "Marcia G. Shein".

UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT
  

No. 94-1195 No. 94-1195

UNITED STATES OF AMERICA, UNITED STATES OF AMERICA,

Appellee, Appellee,

v. v.

GIACOMO D. CATUCCI, GIACOMO D. CATUCCI,

Defendant, Appellant. Defendant, Appellant.

  

APPEAL FROM THE UNITED STATES DISTRICT COURT APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND FOR THE DISTRICT OF RHODE ISLAND

[Hon. Raymond J. Pettine, Senior U.S. District Judge]  [Hon. Raymond J. Pettine, Senior U.S. District Judge]  

  

Torruella, Chief Judge, Torruella, Chief Judge, 

Aldrich, Senior Circuit Judge, Aldrich, Senior Circuit Judge, 

and Cyr, Circuit Judge. and Cyr, Circuit Judge. 

  

Marcia G. Shein, with whom National Legal Services, Inc. was on Marcia G. Shein, with whom National Legal Services, Inc. was on 
brief for appellant. brief for appellant.
Craig N. Moore, Assistant United States Attorney, with whom Craig N. Moore, Assistant United States Attorney, with whom 
Sheldon Whitehouse, United States Attorney, was on brief for appellee. Sheldon Whitehouse, United States Attorney, was on brief for appellee. 

  

May 24, 1995 May 24, 1995
  

CYR, Circuit Judge. After a jury returned guilty CYR, Circuit Judge. 

verdicts against defendant-appellant Giacom D. Catucci on four

toxic-waste dumping charges, the district court imposed a twenty-

seven month prison sentence and Catucci appealed. Finding no

reversible error, we affirm.

I I

BACKGROUND BACKGROUND 

The salient facts are recited in the light most favor-

able to the verdicts. United States v. Tuesta-Toro, 29 F.3d 771, 

774 (1st Cir. 1994). In 1987, Catucci, then the proprietor of

Post Tron Systems, instructed the plant superintendent to obtain

cost quotations for removing two PCB-laden electrical transform-

ers from the firm's business premises in Providence, Rhode

Island. The cost estimates ranged between $8,000 and $10,000 per

unit. Years later, in June 1991, Post Tron Systems' lending bank

conducted an environmental audit and specifically informed

Catucci that the two transformers containing PCBs would have to

be removed in accordance with Environmental Protection Agency

("EPA") regulations. Shortly thereafter, Post Tron went out of

business.

During the course of subsequent renovations to the

business facilities, Catucci arranged for Manuel Almeida and

Timothy Arcaro to remove a conveyor belt system. As compensa-

tion, Almeida and Arcaro were to retain the salvageable scrap

metal approximating $40 per day in value recovered in the

course of the renovations. Almeida and Arcaro later offered to

3 3

remove all five transformers at the site, including the two PCB-

laden ones, in return for the right to retain the salvage value

of their copper coils. Although the plant superintendent remind-

ed Catucci that scrapping the transformers would be against the

law, Catucci nevertheless granted permission, stating to the

superintendent: "If [Arcaro] wants them, he can have them all."

A few months later, Almeida, Arcaro and a third in-

dividual David Dellinger removed two units, including one

of the PCB-laden transformers, after loosening their lids and

thereby causing oil to leak onto local streets and I-95 during

transportation. At a secluded gravel pit, the remaining oil was

dumped, the copper coils were removed and the transformers were

abandoned. The next day, the men repeated the process with the

three remaining units one containing PCBs.

More than a year later, while investigating David

Dellinger, the Rhode Island Department of Environment Management

("DEM") discovered the PCB-laden oil that had been dumped from

the Post Tron transformers. A few weeks later, the DEM executed

a search warrant at the former Post Tron facility. On the

following day, Catucci informed the Providence Police Department

that the transformers had been stolen. Not until several months

after Arcaro and Almeida were arrested for stealing the trans-

formers did Catucci admit to having allowed them to remove the

transformers. Even then he claimed that they had been told to

dispose of the transformers lawfully.

Thereafter, Catucci was charged, in two counts, with

4 4

causing unlawful disposal of PCBs in violation of 15 U.S.C.

2615(b) and, in two additional counts, with failing to provide

immediate notification of a release of hazardous materials, in

violation of 42 U.S.C. 9603(b). Following his conviction on

all counts, Catucci was sentenced to twenty-seven months. 

II II

DISCUSSION DISCUSSION 

A. Sufficiency of the Evidence A. Sufficiency of the Evidence 

On appeal, Catucci claims that there was insufficient

evidence that he knew the two PCB-laden transformers would be

disposed of illegally, an essential element in each offense

charged. See 15 U.S.C. 2615(b) (establishing criminal sanc- 

tions for knowingly or willfully violating EPA dumping regula- 

tions); 42 U.S.C. 9603(b) (establishing criminal sanctions

against any person for failing to notify appropriate government

agency of release "as soon as he has knowledge of such release");

United States v. Buckley, 934 F.2d 84, 89 (6th Cir. 1991); United 

States v. Pacific Hide & Fur Depot, Inc., 768 F.2d 1096, 1098 

(9th Cir. 1985) (Kennedy J.) ( 2615); United States v. Ward, 

676 F.2d 94, 97 (4th Cir.) (same), cert. denied, 459 U.S. 835 

(1982). 

Under the established standard of review set out in the

margin,1 we find ample evidence to support the essential jury
 

1 We assess the sufficiency of the evidence as a whole,
including all reasonable inferences, in the light most
favorable to the verdict, with a view to whether a
rational trier of fact could have found the defendant

5 5

findings that Catucci knew Almeida and Arcaro would dump the PCBs

unlawfully, and that he did not provide timely notice to govern-

mental authorities. 

First, the evidence at trial demonstrated that Catucci

had been informed, by his plant superintendent, that lawful

disposal of each PCB-laden transformer would cost between $8,000

and $10,000, since EPA regulations required that they be inciner-

ated. As Almeida and Arcaro were willing to remove the trans-

formers in return for the salvage value of their copper coils,

the jury assuredly could infer that Catucci was well aware that

the two PCB-laden transformers were not going to be incinerated

at a total minimum cost of $16,000 by volunteers who would

receive only their scrap value in return. See United States v. 

Tejeda, 974 F.2d 210, 213 (1st Cir. 1992) (noting that jurors may 

evaluate evidence in light of "their experience as to the natural

inclinations of human beings"). Second, Catucci subsequently

misrepresented that the transformers had been stolen, which

permitted the jury to infer consciousness of guilt. See United 

States v. Passos-Paternina, 918 F.2d 979, 985 (1st Cir. 1990) 

(jury may construe knowingly false statement as evidence of

consciousness of guilt), cert. denied, 499 U.S. 982, and cert. 
 

guilty beyond a reasonable doubt. We do not weigh
witness credibility, but resolve all credibility issues
in favor of the verdict. The evidence may be entirely
circumstantial, and need not exclude every reasonable
hypothesis of innocence; that is, the fact finder may
decide among reasonable interpretations of the evi-
dence.

United States v. Hahn, 17 F.3d 502, 506 (1st Cir. 1994). 

6 6

denied, 501 U.S. 1210 (1991).  

7 7

B. Adjustment for Repetitive Discharge B. Adjustment for Repetitive Discharge 

Catucci assigns error in the net four-level upward

adjustment the sentencing court made pursuant to U.S.S.G. 

2Q1.2(b)(1)(A), which states:

If the offense resulted in an ongoing, con-
tinuous, or repetitive discharge, release or
emission of a hazardous or toxic substance or
pesticide into the environment, increase by 6
levels.

Catucci argues that it was mere happenstance that the

two PCB-laden transformers were dumped on different days. Conse-

quently, he contends, absent evidence that he intended repetitive

discharges the district court misapplied the repetitive discharge

adjustment. We discern no error.2 After adopting a six-level

upward adjustment under U.S.S.G. 2Q1.2(b)(1)(A), the district 

court invoked Application Note 5 as authority for a two-level

downward departure, resulting in a net upward adjustment of four 

levels. Application Note 5 expressly states that the district

court is invested with authority to make "a departure of up to

two levels in either direction" depending upon the quantity and

duration of the discharge and the nature of the harm caused by

it. U.S.S.G. 2Q1.2, comment. (n.5). 

U.S.S.G. 2Q1.2(b)(1)(A) is triggered if the offense

resulted in an ongoing, continuous or repetitive discharge. 

 

2Guideline interpretations are reviewed de novo, whereas 
relevant factual findings are reviewed for clear error and their
application under the guideline is accorded due deference. See 
United States v. Ovalle-Marquez, 36 F.3d 212, 221 (1st Cir. 
1994), cert. denied, 115 S. Ct. 947, and cert. denied, 115 S. Ct. 
1322 (1995). 

8 8

Catucci concedes that the two PCB-laden transformers were dumped

on separate occasions. Nothing more need be shown to activate

the repetitive discharge adjustment. See United States v. 

Liebman, 40 F.3d 544, 550 (2d Cir. 1994) (repetitive discharge 

adjustment under 2Q1.2(b)(1)(A) warranted where defendant had

untrained workers remove hazardous material from factory, and

workers unlawfully dumped material on several different days);

United States v. Strandquist, 993 F.2d 395, 401 (4th Cir. 1993) 

(analogous upward adjustment under 2Q1.3(b)(1)(A) for repeti-

tive discharge triggered by establishing second discharge). 

C. Aberrant Behavior C. Aberrant Behavior 

Catucci urges a remand for resentencing because the

district court allegedly misapprehended its authority to depart

downward on the ground that these offenses constituted "aberrant

behavior." See United States v. Russell, 870 F.2d 18, 20 (1st 

Cir. 1989) (adverting to guideline relating to "aberrant behav-

ior" departures). 

At sentencing, the district court repeatedly indicated

its readiness to allow a principled downward departure. Yet

despite the district court's specific invitation ("Do you see

anything . . . which would authorize my departure in this case in

a justifiable and reasonable manner?") and its apparent displea-

sure at having to impose a prison sentence on a person "who may

have had an aberration," no "aberrant behavior" claim was pre-

sented to the district court. In these stark circumstances, a

finding of waiver is virtually compelled. Cf. United States v. 

9 9

Montoya, 967 F.2d 1, 2 (1st Cir. 1992) (sentencing claim not 

presented to district court deemed waived), cert. denied, 113 S. 

Ct. 507 (1992); United States v. Dietz, 950 F.2d 50, 55 (1st Cir. 

1991); United States v. Rosalez-Cortez, 19 F.3d 1210, 1220 (7th 

Cir. 1994) (failure to raise "aberrant behavior" claim in dis-

trict court results in waiver).3

D. Criminal Rule 32 D. Criminal Rule 32 

Catucci contends that resentencing is necessary because

the district court failed to comply with Rule 32(c)(3)(D), which

provides that, as to any alleged "factual inaccuracy in the

presentence investigation report," the district court is to "make

(i) a finding as to the allegation or (ii) a determination that

no such finding is necessary because the matter controverted will

not be taken into account in sentencing." A "written record" of

the sentencing court's findings is required. United States v. 

Savoie, 985 F.2d 612, 620 (1st Cir. 1993).  
 

3Even assuming, arguendo, that the present claim had been 
preserved, we note that six circuits have determined that "aber-
rant behavior" is not established unless the defendant is a
first-time offender and the crime was "a spontaneous and seeming-
ly thoughtless act rather than one which was the result of
substantial planning." United States v. Carey, 895 F.2d 318, 
324-25 (7th Cir. 1990). See United States v. Premachandra, 32 
F.3d 346, 349 (8th Cir. 1994); United States v. Duerson, 25 F.3d 
376, 380 (6th Cir. 1994); United States v. Marcello, 13 F.3d 752, 
761 (3d Cir. 1994); United States v. Williams, 974 F.2d 25, 26 
(5th Cir. 1992), cert. denied, 113 S. Ct. 1320 (1993); United 
States v. Glick, 946 F.2d 335, 338 (4th Cir. 1991). The Ninth 
and Tenth Circuits apply a somewhat different test, permitting a
downward departure for "aberrant behavior" based on a finding
that the offense did not comport with the defendant's "normal
character . . . [and] is a complete shock and out of character."
United States v. Tsosie, 14 F.3d 1438, 1441 (10th Cir. 1994); 
United States v. Fairless, 975 F.2d 664, 666-67 (9th Cir. 1992). 
In all events,given the circumstances we discern no plain error. 

10 10

Catucci argues that the sentencing court failed to

address the following claim that he be allowed a downward adjust-

ment as a "minor or minimal" participant: 

. . . you could make a downward departure
based upon a role as a minor in the offense
or . . . a minimal role in that offense and
in -- in the whole case, if you believe the
jury's decision, they were told that I gave
permission to take the transformers.

No one ever said that I told them to dispose
of the transformers or I gave permission to
dump the transformers. They said they allege
that they asked me for permission to take the
copper from the transformers and that's the
worst of the testimony from that perspective,
so I just raise that issue.

Later in his allocution, after Catucci had asserted his inno-

cence, the district court cautioned that it could not disregard

the jury verdicts.4 The district court ruling rejecting a

downward adjustment under U.S.S.G. 3B1.2 is not challenged on

appeal. 

Catucci's claimed entitlement to a downward "departure"

under U.S.S.G. 3B1.2, notwithstanding the central jury finding

that he knowingly allowed Arcaro and Almeida to dispose of the

transformers, did not challenge any factual statement in the pre- 

sentence report, but amounted instead to an attempt to dispute

the legal import of the jury verdicts. Absent a claim of factual

inaccuracy, the Rule 32(c)(3)(D) requirement simply is not impli-
 

4A role-in-the-offense determination presents a mixed
question of law and fact, United States v. Carrozza, 4 F.3d 70, 
89 (1st Cir. 1993), cert. denied, 114 S. Ct. 1644 (1994), which 
we review only for clear error, by reason of its fact-bound
nature, United States v. Rodriguez Alvarado, 985 F.2d 15, 19 (1st 
Cir. 1993). 

11 11

cated. United States v. Pellerito, 918 F.2d 999, 1003 (1st Cir. 

1990) (Rule 32(c)(3)(D) not triggered by claim of legal error);

United States v. Reese, 998 F.2d 1275, 1285 (5th Cir. 1993) (Rule 

32(c)(3)(D) not triggered by claim of error in assigning role in

offense).5 

III III

CONCLUSION CONCLUSION 

For the foregoing reasons, the judgment of conviction

and sentence is affirmed. 

Affirmed. Affirmed. 

 

5United States v. Rosado-Ubiera, 947 F.2d 644, 645-46 (2d 
Cir. 1991), is not to the contrary. There the district court had
refused to resolve both a factual dispute, as to the defendant's
conduct, and the defendant's role in the offense. 

12 12