USCA1 Opinion

 

 June 7, 1995 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  __________________ No. 94-1195 UNITED STATES OF AMERICA, Appellee, v. GIACOMO D. CATUCCI, Defendant, Appellant.  ____________________ ERRATA SHEET The opinion of this Court issued on May 24, 1995, is amended as follows: Cover sheet: change spelling of appellant's attorney's name to "Marcia G. Shein". UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT   ____________________ No. 94-1195 No. 94-1195 UNITED STATES OF AMERICA, UNITED STATES OF AMERICA, Appellee, Appellee, v. v. GIACOMO D. CATUCCI, GIACOMO D. CATUCCI, Defendant, Appellant. Defendant, Appellant.   ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND FOR THE DISTRICT OF RHODE ISLAND [Hon. Raymond J. Pettine, Senior U.S. District Judge]  [Hon. Raymond J. Pettine, Senior U.S. District Judge]  __________________________   ____________________ Torruella, Chief Judge, Torruella, Chief Judge, ___________ Aldrich, Senior Circuit Judge, Aldrich, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. and Cyr, Circuit Judge. _____________   ____________________ Marcia G. Shein, with whom National Legal Services, Inc. was on Marcia G. Shein, with whom National Legal Services, Inc. was on _______________ _____________________________ brief for appellant. brief for appellant. Craig N. Moore, Assistant United States Attorney, with whom Craig N. Moore, Assistant United States Attorney, with whom ________________ Sheldon Whitehouse, United States Attorney, was on brief for appellee. Sheldon Whitehouse, United States Attorney, was on brief for appellee. __________________   ____________________ May 24, 1995 May 24, 1995   ____________________ CYR, Circuit Judge. After a jury returned guilty CYR, Circuit Judge. ___ verdicts against defendant-appellant Giacom D. Catucci on four toxic-waste dumping charges, the district court imposed a twenty- seven month prison sentence and Catucci appealed. Finding no reversible error, we affirm. I I BACKGROUND BACKGROUND __________ The salient facts are recited in the light most favor- able to the verdicts. United States v. Tuesta-Toro, 29 F.3d 771, _____________ ___________ 774 (1st Cir. 1994). In 1987, Catucci, then the proprietor of Post Tron Systems, instructed the plant superintendent to obtain cost quotations for removing two PCB-laden electrical transform- ers from the firm's business premises in Providence, Rhode Island. The cost estimates ranged between $8,000 and $10,000 per unit. Years later, in June 1991, Post Tron Systems' lending bank conducted an environmental audit and specifically informed Catucci that the two transformers containing PCBs would have to be removed in accordance with Environmental Protection Agency ("EPA") regulations. Shortly thereafter, Post Tron went out of business. During the course of subsequent renovations to the business facilities, Catucci arranged for Manuel Almeida and Timothy Arcaro to remove a conveyor belt system. As compensa- tion, Almeida and Arcaro were to retain the salvageable scrap metal approximating $40 per day in value recovered in the course of the renovations. Almeida and Arcaro later offered to 3 3 remove all five transformers at the site, including the two PCB- laden ones, in return for the right to retain the salvage value of their copper coils. Although the plant superintendent remind- ed Catucci that scrapping the transformers would be against the law, Catucci nevertheless granted permission, stating to the superintendent: "If [Arcaro] wants them, he can have them all." A few months later, Almeida, Arcaro and a third in- dividual David Dellinger removed two units, including one of the PCB-laden transformers, after loosening their lids and thereby causing oil to leak onto local streets and I-95 during transportation. At a secluded gravel pit, the remaining oil was dumped, the copper coils were removed and the transformers were abandoned. The next day, the men repeated the process with the three remaining units one containing PCBs. More than a year later, while investigating David Dellinger, the Rhode Island Department of Environment Management ("DEM") discovered the PCB-laden oil that had been dumped from the Post Tron transformers. A few weeks later, the DEM executed a search warrant at the former Post Tron facility. On the following day, Catucci informed the Providence Police Department that the transformers had been stolen. Not until several months after Arcaro and Almeida were arrested for stealing the trans- formers did Catucci admit to having allowed them to remove the transformers. Even then he claimed that they had been told to dispose of the transformers lawfully. Thereafter, Catucci was charged, in two counts, with 4 4 causing unlawful disposal of PCBs in violation of 15 U.S.C. 2615(b) and, in two additional counts, with failing to provide immediate notification of a release of hazardous materials, in violation of 42 U.S.C. 9603(b). Following his conviction on all counts, Catucci was sentenced to twenty-seven months.  II II DISCUSSION DISCUSSION __________ A. Sufficiency of the Evidence A. Sufficiency of the Evidence ___________________________ On appeal, Catucci claims that there was insufficient evidence that he knew the two PCB-laden transformers would be disposed of illegally, an essential element in each offense charged. See 15 U.S.C. 2615(b) (establishing criminal sanc- ___ tions for knowingly or willfully violating EPA dumping regula- __ tions); 42 U.S.C. 9603(b) (establishing criminal sanctions against any person for failing to notify appropriate government agency of release "as soon as he has knowledge of such release"); United States v. Buckley, 934 F.2d 84, 89 (6th Cir. 1991); United _____________ _______ ______ States v. Pacific Hide & Fur Depot, Inc., 768 F.2d 1096, 1098 ______ ________________________________ (9th Cir. 1985) (Kennedy J.) ( 2615); United States v. Ward, _____________ ____ 676 F.2d 94, 97 (4th Cir.) (same), cert. denied, 459 U.S. 835 _____ ______ (1982).  Under the established standard of review set out in the margin,1 we find ample evidence to support the essential jury  ____________________ 1 We assess the sufficiency of the evidence as a whole, including all reasonable inferences, in the light most favorable to the verdict, with a view to whether a rational trier of fact could have found the defendant 5 5 findings that Catucci knew Almeida and Arcaro would dump the PCBs unlawfully, and that he did not provide timely notice to govern- mental authorities.  First, the evidence at trial demonstrated that Catucci had been informed, by his plant superintendent, that lawful disposal of each PCB-laden transformer would cost between $8,000 and $10,000, since EPA regulations required that they be inciner- ated. As Almeida and Arcaro were willing to remove the trans- formers in return for the salvage value of their copper coils, the jury assuredly could infer that Catucci was well aware that the two PCB-laden transformers were not going to be incinerated at a total minimum cost of $16,000 by volunteers who would receive only their scrap value in return. See United States v. ___ _____________ Tejeda, 974 F.2d 210, 213 (1st Cir. 1992) (noting that jurors may ______ evaluate evidence in light of "their experience as to the natural inclinations of human beings"). Second, Catucci subsequently misrepresented that the transformers had been stolen, which permitted the jury to infer consciousness of guilt. See United ___ ______ States v. Passos-Paternina, 918 F.2d 979, 985 (1st Cir. 1990) ______ ________________ (jury may construe knowingly false statement as evidence of consciousness of guilt), cert. denied, 499 U.S. 982, and cert. _____ ______ _____  ____________________ guilty beyond a reasonable doubt. We do not weigh witness credibility, but resolve all credibility issues in favor of the verdict. The evidence may be entirely circumstantial, and need not exclude every reasonable hypothesis of innocence; that is, the fact finder may decide among reasonable interpretations of the evi- dence. United States v. Hahn, 17 F.3d 502, 506 (1st Cir. 1994). _____________ ____ 6 6 denied, 501 U.S. 1210 (1991).  ______ 7 7 B. Adjustment for Repetitive Discharge B. Adjustment for Repetitive Discharge ___________________________________ Catucci assigns error in the net four-level upward adjustment the sentencing court made pursuant to U.S.S.G.  2Q1.2(b)(1)(A), which states: If the offense resulted in an ongoing, con- tinuous, or repetitive discharge, release or emission of a hazardous or toxic substance or pesticide into the environment, increase by 6 levels. Catucci argues that it was mere happenstance that the two PCB-laden transformers were dumped on different days. Conse- quently, he contends, absent evidence that he intended repetitive discharges the district court misapplied the repetitive discharge adjustment. We discern no error.2 After adopting a six-level upward adjustment under U.S.S.G. 2Q1.2(b)(1)(A), the district ______ __________ court invoked Application Note 5 as authority for a two-level downward departure, resulting in a net upward adjustment of four ________ _________ levels. Application Note 5 expressly states that the district court is invested with authority to make "a departure of up to two levels in either direction" depending upon the quantity and duration of the discharge and the nature of the harm caused by it. U.S.S.G. 2Q1.2, comment. (n.5).  U.S.S.G. 2Q1.2(b)(1)(A) is triggered if the offense resulted in an ongoing, continuous or repetitive discharge. ________ __  ____________________ 2Guideline interpretations are reviewed de novo, whereas __ ____ relevant factual findings are reviewed for clear error and their application under the guideline is accorded due deference. See ___ United States v. Ovalle-Marquez, 36 F.3d 212, 221 (1st Cir. ______________ ______________ 1994), cert. denied, 115 S. Ct. 947, and cert. denied, 115 S. Ct. _____ ______ _____ ______ 1322 (1995).  8 8 Catucci concedes that the two PCB-laden transformers were dumped on separate occasions. Nothing more need be shown to activate the repetitive discharge adjustment. See United States v. ___ ______________ Liebman, 40 F.3d 544, 550 (2d Cir. 1994) (repetitive discharge _______ adjustment under 2Q1.2(b)(1)(A) warranted where defendant had untrained workers remove hazardous material from factory, and workers unlawfully dumped material on several different days); United States v. Strandquist, 993 F.2d 395, 401 (4th Cir. 1993) _____________ ___________ (analogous upward adjustment under 2Q1.3(b)(1)(A) for repeti- tive discharge triggered by establishing second discharge).  C. Aberrant Behavior C. Aberrant Behavior _________________ Catucci urges a remand for resentencing because the district court allegedly misapprehended its authority to depart downward on the ground that these offenses constituted "aberrant behavior." See United States v. Russell, 870 F.2d 18, 20 (1st ___ _____________ _______ Cir. 1989) (adverting to guideline relating to "aberrant behav- ior" departures).  At sentencing, the district court repeatedly indicated its readiness to allow a principled downward departure. Yet despite the district court's specific invitation ("Do you see anything . . . which would authorize my departure in this case in a justifiable and reasonable manner?") and its apparent displea- sure at having to impose a prison sentence on a person "who may have had an aberration," no "aberrant behavior" claim was pre- sented to the district court. In these stark circumstances, a finding of waiver is virtually compelled. Cf. United States v. ___ ______________ 9 9 Montoya, 967 F.2d 1, 2 (1st Cir. 1992) (sentencing claim not _______ presented to district court deemed waived), cert. denied, 113 S. _____ ______ Ct. 507 (1992); United States v. Dietz, 950 F.2d 50, 55 (1st Cir. _____________ _____ 1991); United States v. Rosalez-Cortez, 19 F.3d 1210, 1220 (7th _____________ ______________ Cir. 1994) (failure to raise "aberrant behavior" claim in dis- trict court results in waiver).3 D. Criminal Rule 32 D. Criminal Rule 32 ________________ Catucci contends that resentencing is necessary because the district court failed to comply with Rule 32(c)(3)(D), which provides that, as to any alleged "factual inaccuracy in the presentence investigation report," the district court is to "make (i) a finding as to the allegation or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing." A "written record" of the sentencing court's findings is required. United States v. ______________ Savoie, 985 F.2d 612, 620 (1st Cir. 1993).  ______  ____________________ 3Even assuming, arguendo, that the present claim had been ________ preserved, we note that six circuits have determined that "aber- rant behavior" is not established unless the defendant is a first-time offender and the crime was "a spontaneous and seeming- ly thoughtless act rather than one which was the result of substantial planning." United States v. Carey, 895 F.2d 318, ______________ _____ 324-25 (7th Cir. 1990). See United States v. Premachandra, 32 ___ _____________ ____________ F.3d 346, 349 (8th Cir. 1994); United States v. Duerson, 25 F.3d _____________ _______ 376, 380 (6th Cir. 1994); United States v. Marcello, 13 F.3d 752, _____________ ________ 761 (3d Cir. 1994); United States v. Williams, 974 F.2d 25, 26 _____________ ________ (5th Cir. 1992), cert. denied, 113 S. Ct. 1320 (1993); United _____ ______ ______ States v. Glick, 946 F.2d 335, 338 (4th Cir. 1991). The Ninth ______ _____ and Tenth Circuits apply a somewhat different test, permitting a downward departure for "aberrant behavior" based on a finding that the offense did not comport with the defendant's "normal character . . . [and] is a complete shock and out of character." United States v. Tsosie, 14 F.3d 1438, 1441 (10th Cir. 1994); _____________ ______ United States v. Fairless, 975 F.2d 664, 666-67 (9th Cir. 1992). ______________ ________ In all events,given the circumstances we discern no plain error.  10 10 Catucci argues that the sentencing court failed to address the following claim that he be allowed a downward adjust- ment as a "minor or minimal" participant:  . . . you could make a downward departure based upon a role as a minor in the offense or . . . a minimal role in that offense and in -- in the whole case, if you believe the jury's decision, they were told that I gave permission to take the transformers. No one ever said that I told them to dispose of the transformers or I gave permission to dump the transformers. They said they allege that they asked me for permission to take the copper from the transformers and that's the worst of the testimony from that perspective, so I just raise that issue. Later in his allocution, after Catucci had asserted his inno- cence, the district court cautioned that it could not disregard the jury verdicts.4 The district court ruling rejecting a downward adjustment under U.S.S.G. 3B1.2 is not challenged on appeal.  Catucci's claimed entitlement to a downward "departure" under U.S.S.G. 3B1.2, notwithstanding the central jury finding that he knowingly allowed Arcaro and Almeida to dispose of the transformers, did not challenge any factual statement in the pre- ___ ___ _________ ___ _______ _________ sentence report, but amounted instead to an attempt to dispute the legal import of the jury verdicts. Absent a claim of factual inaccuracy, the Rule 32(c)(3)(D) requirement simply is not impli-  ____________________ 4A role-in-the-offense determination presents a mixed question of law and fact, United States v. Carrozza, 4 F.3d 70, _____________ ________ 89 (1st Cir. 1993), cert. denied, 114 S. Ct. 1644 (1994), which _____ ______ we review only for clear error, by reason of its fact-bound nature, United States v. Rodriguez Alvarado, 985 F.2d 15, 19 (1st _____________ __________________ Cir. 1993).  11 11 cated. United States v. Pellerito, 918 F.2d 999, 1003 (1st Cir. _____________ _________ 1990) (Rule 32(c)(3)(D) not triggered by claim of legal error); United States v. Reese, 998 F.2d 1275, 1285 (5th Cir. 1993) (Rule _____________ _____ 32(c)(3)(D) not triggered by claim of error in assigning role in offense).5  III III CONCLUSION CONCLUSION __________ For the foregoing reasons, the judgment of conviction and sentence is affirmed.  Affirmed. Affirmed. ________  ____________________ 5United States v. Rosado-Ubiera, 947 F.2d 644, 645-46 (2d _____________ _____________ Cir. 1991), is not to the contrary. There the district court had refused to resolve both a factual dispute, as to the defendant's conduct, and the defendant's role in the offense.  12 12